OPINION
{¶ 1} Appellant, James R. Jenkins, appeals from a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, granting the parties a divorce, dividing marital property, and awarding spousal support to appellee, Alice M. Jenkins. For the reasons set forth below, we affirm the judgment in part, reverse the judgment in part, and remand this matter for further proceedings consistent with this opinion.
 {¶ 2} Appellee filed a complaint for divorce on January 12, 2001. Appellant timely answered and counterclaimed for divorce on May 9, 2001. Appellee answered and then amended her complaint to add appellant's mother, Helen Jenkins, as a defendant on May 21, 2001.
 {¶ 3} The following facts are relevant to the instant appeal. Appellant and appellee were born May 25, 1939 and September 23, 1940, respectively. The parties married on September 20, 1963, and appellee left the marital home on October 30, 2000. The parties were married for thirty-nine years and had no minor children as issue of the marriage.
 {¶ 4} Appellant was a high school graduate and cannot read or write. Appellant retired on May 25, 2001, from the Ohio Operating Engineers Local 18, and the value of his pension was approximately $177,453 on or about the date of the final separation and was $192,474.29 on or about date of the hearing. His Social Security benefits were approximately $1,050 per month, and his retirement benefit from a John Hancock annuity was $176.33 per month as a result of his employment with the Ohio Operating Engineers Local 18.[1] He testified that he had problems breathing and with his kidneys, eyes, and back.
 {¶ 5} Appellee worked as an aide at Altercare, a nursing home, earning $10.95 per hour for a 37.5 hour week; her annual income was approximately $17,000. Appellee had a 401(k) plan through Altercare that had a balance of $2,191.85 on June 30, 2001, and her Social Security benefits at age sixty-two would approximate $444 per month. Appellee had two United Presidential life insurance policies in the amounts of $4,980 and $2,898.
 {¶ 6} Appellee testified that she suffered from sleep apnea and narcolepsy and that she had problems with her knees which were exacerbated by an automobile accident on July 18, 2001. The accident occurred when her GMC Jimmy was hit by an uninsured motorist, flipped over, and caught fire; appellee testified that the accident also caused her left foot and ankle to become damaged. According to appellee, she wished to retire but remained employed so she could receive health benefits. Appellant suggested personal injury litigation will ensue over this accident, but no evidence in the record supports this.
 {¶ 7} During the course of their marriage, the parties purchased a mobile home which was placed on acreage owned by appellant's parents. The purchase price of this mobile home, on July 29, 1992, was $33,445. According to appellant, he had agreed with his now-deceased father that he and appellee would put their mobile home on his parents' land in exchange for appellant and appellee helping his parents with farm work. The parties were not charged rent, but appellant testified the parties had been paying rent in the amount of $500 per month to his mother since the time when his father passed away about three years prior to the 2001 hearings. The parties invested marital funds to install a septic system, a foundation for the mobile home, and other improvements to the mobile home.
 {¶ 8} On June 6, 2001, the trial court directed the appraiser to value the mobile home individually as well as if it hypothetically sat on the 1.5 acres of land This appraisal was filed on July 12, 2001 and estimated that the mobile home had a current value of $21,690 and a value, if attached to two acres of land, at $87,500. The appraisal also estimated the value of footers and foundation at $8,300; the well and septic system at $3,000 and $6,000 respectively; the driveway at $2,000; and the deck at $3,000. No objections to this appraisal were filed.
 {¶ 9} The parties had a joint Bank One account with a value of $58,808.59 in early December 2000, from which appellant withdrew $25,000 on or about December 7, 2000. Appellant put these funds into a PFL life insurance annuity. A restraining order was issued on January 16, 2001 prohibiting withdrawals from this account, but appellant withdrew about $20,000 and put these funds into his mother's checking account. From this money, appellant testified that he paid farm expenses, fixed his truck, bought tires, fixed his Buick, and paid automobile insurance. Pursuant to a trial court order, appellant turned $20,000 over to his counsel, and the funds were put into an escrow account. From this escrow account, appellant's counsel wrote him checks enabling appellant to pay medical bills, property taxes, automobile repairs, automobile insurance, and miscellaneous debts all which appellant contended were marital debts. The escrow account currently had a balance of $17,351.92.
 {¶ 10} The parties had three vehicles. Their 1994 Chevrolet truck was valued at $8,000; their 1991 Buick at $1,000; and their 1991 GMC Jimmy at $3,500.
 {¶ 11} The matter was heard before a magistrate on August 30, 2001 and then recessed for additional testimony and evidence not then available. The hearing was concluded on December 14, 2001, and the magistrate issued his decision April 16, 2002. In this decision, the magistrate found that "[t]here is a marital residence valued at some $87,500" and "[t]here is a pension through the Ohio Operating Engineers valued at $198,234.98." Thereafter, the magistrate recommended the following be awarded to appellant: the marital residence, the John Hancock life insurance policy, the 1994 Chevrolet, the 1991 Buick, and the Bank One savings account. The magistrate recommended the following be awarded to appellee: the PFL life insurance policy, the two United Presidential Insurance policies, the GMC Jimmy vehicle, the "escrow account of $20,000," and her 401(k) though Altercare.
 {¶ 12} The magistrate also recommended appellant keep $5,000 in gold he possessed as his separate property. The magistrate suggested appellee should receive $1,600 of her attorney fees from appellant due to appellant's misconduct during these proceedings.
 {¶ 13} The magistrate did not total the value of the respective property distributions to the parties. However, the magistrate recommended appellant's pension be divided with appellant receiving thirty-eight percent and appellee receiving sixty-two percent, in order to equalize the assets of the parties and achieve an equitable result.
 {¶ 14} Appellant filed objections to the magistrate's decision on April 30, 2002 on the issues of spousal support, valuation of assets, and property division. Appellant objected to the magistrate's suggested division of his pension, arguing that this division of his pension was based on a mathematically incorrect calculation of the property distribution. Appellant also objected to the valuation of his pension. The $198,234.98 value was the value of the pension on September 17, 2001, close in time to the August 30, 2001 hearing. Appellant argued that the court should consider the valuation of the pension as of the date of their separation, which was prior to the January 2001 commencement of this action, and that the trial court's overall division of the pension was not equitable.
 {¶ 15} Appellant also took issue with the magistrate's valuation of the marital residence, arguing that the trial court should consider the appraised value of the mobile home alone at $21,690. Appellant also argued that the amount of $17,351.92 should be the value of the escrow account, as testimony and evidence at trial indicated that only $17,351.91 remained in the account after appellant paid marital debts. Appellant also argued that the magistrate failed to consider $6,000 of household goods removed from the marital residence by appellee and failed to credit appellant for his payment of joint marital debts. Also, according to appellant, the magistrate failed to consider appellant's income when fashioning a spousal support award.
 {¶ 16} The magistrate amended his decision on June 4, 2002, only to reduce the value of the parties' mobile home. In his amended decision, the magistrate found "[t]here is a marital residence valued at some $87,500. That apparently includes the value of the land upon which the mobile home sits. The magistrate finds that the land is in the name of the defendant's mother and has never been conveyed to either the defendant or the plaintiff. The evidence is also clear that the parties intended for the mobile home to be their marital residence. The parties did maintenance work and repairs around the home of the defendant's mother in lou [sic] of making payments on the land
 {¶ 17} "The magistrate further finds that there was at least $22,300 worth of improvements to this land by the parties from the marital assets, including the foundation, septic, footers, well, driveway and a deck. The magistrate finds, therefore, the value of the mobile home at $21,960 and those improvements makes [sic] the marital asset $43,990, of which each of the parties are [sic] entitled to one-half of that amount."
 {¶ 18} In his amended decision, the magistrate did not modify the division of property as outlined in his initial decision. However, at this time, the magistrate stated "that the distribution of the assets of the parties is, therefore * * * valued at $111,308.92 to [appellant] and $33,856.82 to [appellee]." Accordingly, the magistrate stated that appellant's pension should be divided, with thirty-one percent awarded to appellee and appellant retaining sixty-nine percent, in order to achieve an equitable result.
 {¶ 19} Appellant again filed objections to this decision, on June 18, 2002, on the same issues of spousal support, valuation of assets, and property division. The magistrate overruled appellant's objections on September 5, 2002. The trial court confirmed the magistrate's decision and issued an October 2, 2002 judgment entry granting the parties a divorce, dividing marital assets, and awarding spousal support to appellee.
 {¶ 20} In pertinent part, the trial court awarded to appellant: the marital residence;[2] appellant's John Hancock life insurance policy in the approximate amount of $19,773.06;[3] a Chevrolet valued at $8,000; a Buick valued at $1,000; the parties' Bank One savings account valued at approximately $13,545.86; half the value of the Bank One account in appellee's name with an approximate balance of $1,965.82; the gold in appellant's possession valued at $5,000; and thirty-one percent of appellant's pension through the International Union of Operating Engineers, Local 18.[4]
 {¶ 21} The trial court awarded to appellee: appellant's PFL insurance policy with an approximate current value of $25,512.30; sixty-nine percent of appellant's pension maintained by the International Union of Operating Engineers, Local 18;[5]
two United Presidential life insurance policies with approximate values of $2,898.07 and $4,980.64; the GMC Jimmy vehicle valued at $3,500; appellee's 401(k) through Altercare; half the value of the Bank One account in appellee's own name with an approximate balance of $1,965.82; and "the * * * $20,000 escrow account that was ordered to be transferred from appellant's counsel's trust account into an interest bearing account pursuant to a Magistrate order dated June 6, 2001 * * *."[6] The trial court also stated that appellant shall not be entitled to any deductions from the $20,000 escrow account for his payment of marital debts from this account.
 {¶ 22} From this judgment, appellant puts forth the following assignments of error:
 {¶ 23} "[1.] The Portage County Court of Domestic Relations Decision [sic] abused its discretion in failing to equitably divide and distribute the marital estate between [the parties].
 {¶ 24} "[2.] The Portage County of Domestic Relations Decision [sic] failed to adequately list which factors in Ohio Revised Code Section 3105.18(B) led the court to make its conclusion."
 {¶ 25} In appellant's first assignment of error, he argues that the trial court abused its discretion by failing to equitably divide and distribute marital assets. After our careful review of the record and relevant law, appellant's first assignment of error is well-taken to the limited extent indicated.
 {¶ 26} Before addressing the merits of appellant's first assignment of error, we will first lay out the appropriate standard of review. In a domestic relations action, a trial court is given broad discretion in formulating its division of marital assets. Cherry v. Cherry (1981), 66 Ohio St.2d 348. A reviewing court is limited to determining whether a trial court abused its discretion in making a property division. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128; Kampf v. Kampf (May 3, 1991), 11th Dist. No. 90-A-1503, 1991 Ohio App. LEXIS 1990, at 6-7. An abuse of discretion suggests more than just a mere error of law or judgment on the part of the trial court; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 27} Within his first assignment of error, appellant argues the trial court abused its discretion by assigning an unsupported value to the marital home. We disagree.
 {¶ 28} In his amended decision, the magistrate found that "* * * the value of the mobile home at $21,690 and those improvements makes the marital value asset $43,990 of which each of the parties are entitled to one-half of that amount."
 {¶ 29} Appellant objected to this finding, arguing that "there was no evidence presented at trial of the amount of maintenance work and repairs, nor the value of the improvements which the magistrate finds to be at least $22,300." Appellant essentially reargues this point now, and appellant's arguments are unsupported by the evidence. The appraiser's report, which was admitted into evidence without objection, valued the mobile home at $21,690; footers and foundation at $8,300; well at $3,000; septic at $6,000; driveway and service at $2,000; and a deck at $3,000. Clearly, these improvements total $22,300, and the trial court did not abuse its discretion by considering the value of these improvements when determining the value of the mobile home.
 {¶ 30} The trial court did not state in its judgment entry that it specifically adopted the magistrate's report or the findings therein. Nothing in the trial court's judgment entry states that the trial court found the value of the marital home to be $43,990; however, to the extent that the trial court relied on that amount as the value of the marital home, we cannot conclude the trial court abused its discretion.
 {¶ 31} Within his first assignment of error, appellant next argues that the trial court abused its discretion by failing to equitably divide the marital assets in general. Appellant objected to the magistrate's findings on this point, and appellant now challenges the magistrate's calculation of the net distribution awards which led the trial court to equalize the assets of the parties by granting appellee sixty-nine percent of appellant's pension. This argument holds merit.
 {¶ 32} In his amended report, the magistrate stated that "* * * the distribution of the assets for the parties is, therefore, * * * valued at $111,308.92 to the [appellant] and $33,856.82 to the [appellee]. In order to equalize the assets of the parties, the pension plan of the defendant should be divided to give the plaintiff 69 percent of the assets of the operating engineer's plan and the defendant would then receive 31 percent * * *."
 {¶ 33} Our careful calculation reveals that the magistrate's calculations, on which the trial court's judgment was based, were clearly erroneous. We review our calculations:
 {¶ 34} The trial court awarded to appellant: the marital home valued at $43,990; the John Hancock life insurance policy valued at $19,773.06; the Chevrolet valued at $8,000; the Buick valued at $1,000; the Bank One savings account valued at $13,545.86; and $982.91 as one-half appellee's bank account. The magistrate calculated the total value of this distribution as $111,308.92.The actual total value was approximately $87,291.83.
 {¶ 35} The trial court awarded the following to appellee: the PFL life insurance policy valued at $25,512.30; a United Presidential life insurance policy valued at $2,898.07; a United Presidential life insurance policy valued at $4,980.64; the GMC Jimmy valued at $3,500; the escrow account valued at $20,000; appellee's Altercare 401(k) valued at $2,191.85; and $982.91 as one-half appellee's bank account. The magistrate calculated the total value of this distribution as $33,856.82. The actual totalvalue was approximately $60,065.77.
 {¶ 36} Based on the magistrate's calculation of the parties' respective property awards, the magistrate suggested dividing appellant's pension plan to achieve an equitable result. Appellant's pension had a total value of $192,474.29. The trial court awarded thirty-one percent, or $59,667.03, of the pension to appellant. Likewise, the trial court awarded sixty-nine percent, or $132,807.26, to appellee. Therefore, based upon erroneous calculations, the magistrate suggested dividing appellant's pension to achieve an equitable result. The trial court agreed.
 {¶ 37} In total, the trial court intended to award approximately $170,975.95 to appellant and $166,664.08 to appellee. The intended respective awards, including propertydistribution and division of appellant's pension, would have beenwithin $5,000 of each other. In actuality, the trial court awarded approximately $146,958.86 to appellant and $192,873.03 to appellee. The actual respective awards differed by almost$46,000.
 {¶ 38} The magistrate's calculations were grossly erroneous. If the magistrate and trial court considered "equitable" to involve respective total distributions within $5,000 of each other, then the trial court's actual property distribution was clearly arbitrary. This is an abuse of discretion. If the discrepancy was unintentional, it needs to be corrected. In either event, appellant's first assignment of error has merit to this extent.
 {¶ 39} Appellant also argues the trial court abused its discretion by failing to properly credit the household expenses paid by appellant for joint liabilities of property taxes and joint motor vehicle insurance.[7] The trial court ordered that $20,000 be held in escrow. Appellant's payment of these debts from this account, even with permission of his counsel, was in contempt of the trial court's order. Appellant should not benefit from his misconduct, and the trial court did not abuse its discretion by failing to credit appellant for his payment of joint liabilities. It is true that the account currently only has a balance of $17,351.92. The trial court must construct an order whereby appellee is awarded the full $20,000.
 {¶ 40} Within the first assignment of error, appellant next argues that the trial court abused its discretion by failing to account for the $6,000 of household goods removed from the household by appellee without prior knowledge of appellant.[8] Our review of the record reveals no evidence other than appellant's self-serving testimony to demonstrate appellee removed goods from the marital home valued at $6,000. Appellant does provide an appraisal of certain household goods totaling about $415, but no evidence demonstrates these goods were taken from the marital home. Accordingly, the trial court did not abuse its discretion by failing to account for $6,000 of household goods appellant alleges appellee removed from the marital home.
 {¶ 41} In appellant's second assignment of error, he argues that the trial court erred by failing to adequately list which factors in R.C. 3105.18(B) it considered when awarding spousal support. Within appellant's first assignment of error, he reiterates his objections to the magistrate's findings and argues the trial court erred by failing to consider appellant's income when fashioning an award of spousal support; for the sake of clarity, we will construe this argument along with appellant's second assignment of error. Our review of the record and relevant law reveal that the trial court did not abuse its discretion by failing to consider appellant's income or by failing to adequately list the relevant facts and reasons behind its award. Accordingly, appellant's second assignment of error is without merit.
 {¶ 42} It is well-established that pursuant to R.C.3105.18(C)(1), the trial court enjoys broad discretion in awarding spousal support to either party when it is appropriate and reasonable to do so. Glass v. Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103, at 6. Such an award will not be disturbed on appeal absent an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. Again, an abuse of discretion suggests more than just a mere error of law or judgment on the part of the trial court; rather it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore at 219.
 {¶ 43} To determine whether spousal support is appropriate and reasonable, the trial court is required to consider the following factors from R.C. 3105.18(C)(1):
 {¶ 44} "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant." Davis v. Davis (Mar. 31, 2000), 11th Dist. No. 98-P-0122, 2000 Ohio App. LEXIS 1443, at 7. A reviewing court must presume the trial court has considered the requisite factors outlined in R.C. 3105.18. Cherry at 356.
 {¶ 45} In Stafinsky v. Stafinsky (1996),116 Ohio App.3d 781, 784, this court held that the trial court is required to provide us with the relevant facts and reasons underlying its award of spousal support, to wit:
 {¶ 46} "In making spousal support awards, R.C. 3105.18
requires the trial court to review the statutory factors in [R.C.3105.18(C)(1)] that support such an order, and then indicate thebasis for awarding spousal support in sufficient detail tofacilitate adequate appellate review." Id., citing Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 96-97.
 {¶ 47} A trial court does not satisfy this requirement by simply stating that it considered the requisite factors. Rather, an entry awarding spousal support must "* * * provide some illumination of the facts and reasoning underlying the judgment. * * * This is true even though evidence was introduced below and contained in the record which may support some award of spousal support." (Citations omitted.) Herman v. Herman (Mar. 28, 1997), 11th Dist. No. 96-P-0194, 1997 Ohio App. LEXIS 1223, at 11. See, also, Stafinsky at 784.
 {¶ 48} In the instant matter, the trial court's April 16, 2002 judgment entry did not state that the trial court adopted the findings of the magistrate, and the only findings outlined in the judgment entry itself relate to the parties' Ohio residency establishing jurisdiction for this matter; the parties date of marriage and that no minor children exist from the marriage; and that evidence demonstrates the parties are incompatible. The trial court "* * * ordered that, after consideration of all of the factors in Ohio Revised Code Section 3105.18, including the length of the marriage, the health of the parties, the needs of the parties, the income potential of the parties, the age of the parties, the assets and debts of the parties, Wife is hereby awarded the sum of four hundred dollars ($400.00) per month * * * in spousal support * * *."
 {¶ 49} We must follow Cherry and presume the trial court reviewed all the requisite factors outlined in R.C. 3105.18(C), including appellant's income, when fashioning the award. Further, as the judgment entry provides some illumination of the facts underlying spousal support, we cannot conclude that the trial court failed to specify in sufficient detail the basis for its award of spousal support. Appellant's second assignment of error is without merit.
 {¶ 50} In conclusion, appellant's first assignment of error has merit to the extent indicated, and appellant's second assignment of error is not well-taken. We reverse this matter in part and remand this matter to the trial court with an order to reconsider the division of appellant's pension based on a correct calculation of the parties' respective property distributions and fashion an order consistent with this opinion.
O'Neill, J., Grendell, J., concur.
[1] Appellant was not currently receiving these payments because his account was frozen pursuant to this litigation. The value of this plan was $19,773.06.
[2] The marital residence and improvements were valued at $43,990, and this is the amount the trial court used to calculate an equitable property division.
[3] This was actually a retirement plan.
[4] Thirty-one percent of appellant's pension equates to $59,667.03.
[5] Sixty-nine percent of appellant's pension equates to $132.807.26.
[6] This amount represents partial proceeds from the parties' joint account at Bank One that had a balance of $58,808.59 in early December 2000. At the time of the magistrate's decisions and the trial court's judgment, the account did not contain $20,000, as discussed earlier.
[7] Appellant previously objected to the magistrate's failure to take this into account.
[8] Appellant previously objected to the magistrate's failure to take this into account.