OPINION
{¶ 1} Appellant, Michael P. Harrison, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Appellee, Pamela M. Harrison, has not filed a brief in this matter.
 {¶ 2} The parties were married in 1980. The marriage produced one child; however, the child was emancipated at the time this action was initiated and is not at issue in these proceedings. Appellee moved out of the marital residence in May 2001. In October 2001, appellee filed a complaint for divorce.
 {¶ 3} On September 19, 2002, appellee filed a motion for temporary and permanent spousal support. The magistrate issued a decision granting appellee $400 per month in temporary spousal support. Appellant filed objections to the magistrate's temporary spousal support award. The trial court did not immediately rule on appellant's objections.
 {¶ 4} In March 2003, a final hearing was held before the magistrate. Both parties testified at this hearing. On April 9, 2003, at 3:22 p.m., the trial court issued a judgment entry overruling appellant's objections to the magistrate's temporary spousal support award. That same day, less than one hour later, at 4:04 p.m., the magistrate issued her final decision on appellee's complaint.
 {¶ 5} The magistrate's decision divided the parties' marital assets, including the equity in the marital home and appellant's pension. In addition, the magistrate's decision awarded $400 per month in spousal support to appellee. The spousal support award was to continue until appellee died, remarried, or cohabitated with an unrelated male. However, the trial court retained jurisdiction to modify the award. The magistrate's decision also required appellant to pay for COBRA health insurance coverage for appellee for eighteen months or until appellee obtained her own health insurance coverage.
 {¶ 6} Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections and adopted the magistrate's decision.
 {¶ 7} Appellant raises two assignments of error. His first assignment of error is:
 {¶ 8} "The trial court erred, to the prejudice of Mr. Harrison, in its award of spousal support to appellee."
 {¶ 9} In his first argument under this assignment of error, appellant contends the magistrate erred by issuing her decision prior to the trial court ruling on his objections to the temporary spousal support award. The transcript reveals the parties and the magistrate agreed that the magistrate would "hold off" on issuing her final decision regarding spousal support until the trial court ruled on appellant's objections to the temporary spousal support order.
 {¶ 10} Initially, we note that appellant did not include this argument in his objections to the magistrate's decision; therefore, he has waived this argument on appeal.[1]
 {¶ 11} Moreover, while the magistrate's decision was docketed prior to the trial court's judgment entry, the respective time-stamps indicate the magistrate's decision was filed about forty minutes after the trial court's judgment entry.
 {¶ 12} Finally, at the final hearing before the magistrate, both parties testified regarding their respective incomes. Also, each party cross-examined the other party regarding his or her financial status. Thus, appellant's contention that he was prevented from presenting evidence on the issue of spousal support is unfounded.
 {¶ 13} We will now address appellant's argument that the award of spousal support is unreasonable.
 {¶ 14} The trial court has significant discretion to award spousal support to one of the parties in a domestic relations proceedings provided the award is "`appropriate and reasonable.'"[2] The trial court's decision will not be reversed by a reviewing court unless the trial court abused its discretion.[3] "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unreasonable.'"[4]
 {¶ 15} A court is to consider the following factors when determining if a spousal support award is "reasonable and appropriate":
 {¶ 16} "(a) [T]he parties' income, (b) the parties' earning abilities, (c) the parties' ages and health, (d) the parties' retirement benefits, (e) the duration of the marriage, (f) the responsibilities of a party as custodian of a minor child, (g) the standard of living established during the marriage, (h) the parties' education, (i) the parties' assets and liabilities, (j) each party's contribution to the other's education and career, (k) the needs of the party seeking support to acquire work skills/education, (l) the tax consequences, (m) a party's diminished earning capacity as a result of his or her marital responsibilities, (n) any other factor the court finds equitable."[5]
 {¶ 17} In this matter, appellee testified she was earning $8.25 per hour as a cashier at a Flying J travel plaza. She testified that she worked just under thirty-two hours per week, the requisite level to qualify for health insurance. The magistrate found that she was working as many hours as her employer made available to her. Appellee's yearly income was between $12,000 and $15,000, and would only be about $17,000 if she worked forty-hour weeks. Appellant worked for the Ohio Department of Transportation ("ODOT") for thirty years. In the years prior to the hearing, appellant earned $54,000 to $59,000 per year.
 {¶ 18} After appellee moved out, appellant remained in the marital home. He assumed paying the mortgage and home-equity loan payments, which totaled nearly $1400 per month. Appellee moved into an apartment, where she is paying $450 per month in rent.
 {¶ 19} Appellant argues the amount of spousal support is unreasonable considering he is burdened with the marital debt. We disagree. While appellant was given the responsibility of paying the debt associated with the mortgage and home equity loan, he was also given the house. If he believes the costs associated with living in the marital residence are too high, he could sell the house, pay off the mortgage, and find less expensive housing.
 {¶ 20} Based upon the standard of living the parties had prior to the divorce and the disparity in the parties' incomes, the trial court's award of $400 per month is reasonable. The trial court did not abuse its discretion in awarding appellee spousal support in the amount of $400 per month.
 {¶ 21} The trial court ordered appellant to provide COBRA health insurance coverage for eighteen months or until appellee obtained her own health insurance. The trial court acknowledged that there was no evidence presented at the hearing as to the cost of COBRA health insurance. The trial court's decision to order appellant to pay for COBRA health insurance coverage for appellee was within its discretion.
 {¶ 22} Appellant contends the trial court erred by not issuing a termination date for the spousal support award. We disagree. Generally, a termination date of a spousal support award is favored.[6] In this matter, rather than indicating a date certain when the spousal support order would terminate, the trial court retained jurisdiction over the matter.
 {¶ 23} "`The decision to retain jurisdiction to modify a spousal support award is within the trial court's discretion.'"[7] The trial court specifically retained jurisdiction over the spousal support issue with the anticipation of revisiting the issue upon the retirement of one or both of the parties. Since the trial court retained jurisdiction over the issue of spousal support, it did not abuse its discretion by failing to state a termination date for the award.
 {¶ 24} Appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error is:
 {¶ 26} "The trial court erred, to the prejudice of Mr. Harrison, in its division of marital property."
 {¶ 27} Appellant argues the trial court erred in dividing the marital assets. "In a domestic relations action, a trial court is given broad discretion in formulating its division of marital assets."[8] Thus, "[a] reviewing court is limited to determining whether a trial court abused its discretion in making a property division."[9]
 {¶ 28} Appellant asserts the trial court erred in dividing his pension. Appellant compiled a significant pension throughout his employment at ODOT in the Public Employee Retirement System ("PERS"). Appellee expected to receive significantly smaller retirement distributions by means of a United Food and Commercial Workers ("UFCW") union pension and social security benefits.
 {¶ 29} Social security benefits, under federal law, are separate property and are not subject to division by a trial court.[10] However, several courts, including this court, have held that the fact one party will receive social security benefits may be considered by a trial court in determining how to divide the other party's pension plan.[11] This is especially applicable in a situation such as this, where one of the parties did not make social security contributions due to membership in a state sponsored retirement plan such as PERS.[12]
 {¶ 30} The trial court applied the Jackson rule to appellant's PERS pension. The trial court also calculated the percentage of each of the retirement accounts that was marital. Appellant does not assert the trial court committed error in this regard.
 {¶ 31} The trial court determined appellee's accounts should be discounted. This is because appellee was not eligible to receive her benefits until she reached age sixty-two, while appellant was eligible to retire at the time of the hearing. The trial court discounted appellee's retirement accounts by 4.9% for twelve years. The magistrate attached a document labeled court's exhibit one to her decision, detailing these offsets. The effect of the discounting was that the marital value of appellee's retirement plan was reduced to about 56% of its initial value. Following the discounting, the value of appellee's plans was offset against appellant's pension plan pursuant to the Jackson rule.
 {¶ 32} The net effect of the discounting is that the figure used to calculate the final percentage of appellant's pension was about $100 more. The trial court ruled that appellee was entitled to 44.23% of appellant's pension plan. On appeal, appellant contends the percentage should be 39.75%, without factoring in the discounting.
 {¶ 33} The trial court was attempting to make an equitable distribution of the parties' retirement benefits. The trial court considered the fact that appellee's retirement benefits would not vest for twelve years, while appellant's retirement benefits could be obtained as soon as he chose to retire, since he was currently eligible. After reviewing the trial court's calculations, we find that they are well reasoned and rationally based.
 {¶ 34} The trial court did not abuse its discretion in its division of appellant's pension.
 {¶ 35} Appellant also objects to the trial court's division of a $3,000 insurance check. Appellee testified she received the check as part of a class action settlement. She took the check when she moved out of the marital residence. The trial court ruled that appellee did not need to repay appellant for his portion of the check because appellee did not receive spousal support for a period of time when she moved out of the residence and she had uncovered medical expenses.
 {¶ 36} Appellant argues that the trial court gave appellee spousal support for a period prior to her requesting it. We disagree. In its discretion, the trial court made a division of marital property. The trial court determined, as one of its factors for the distribution, that appellee did not receive spousal support for over one year after moving from the marital residence.
 {¶ 37} The trial court did not abuse its discretion when it ruled that appellee did not have to pay appellant a portion of the insurance check.
 {¶ 38} Appellant's second assignment of error is without merit.
 {¶ 39} The judgment of the trial court is affirmed.
Rice, J., O'Toole, J., concur.
[1] Civ.R. 53(E)(3)(d).
[2] Bandish v. Bandish, 11th Dist. No. 2002-G-2489, 2004-Ohio-3544, at ¶ 14, citing Glass v. Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103, at *6.
[3] Jenkins v. Jenkins, 11th Dist. No. 2002-P-0121, 2004-Ohio-3332, at ¶ 42, citing Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67.
[4] (Citations omitted.) Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
[5] Hawley v. Hawley, 11th Dist. No. 2003-P-0096, 2004-Ohio-3189, at ¶ 14, citing R.C. 3105.18(C).
[6] See, e.g., Kunkle v. Kunkle, 51 Ohio St.3d at 69.
[7] (Citations omitted.) Shehab v. Shehab, 11th Dist. No. 2002-P-0122,2004-Ohio-5460, at ¶ 16.
[8] Jenkins v. Jenkins, supra, at ¶ 26, citing Cherry v. Cherry
(1981), 66 Ohio St.2d 348.
[9] Id., citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128 and Kampfv. Kampf (May 3, 1991), 11th Dist. No. 90-A-1503, 1991 Ohio App. LEXIS 1990, at *6-7.
[10] Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, at ¶ 7.
[11] Jackson v. Jackson (Mar. 14, 1997), 11th Dist. No. 96-G-1990, 1997 Ohio App. LEXIS 918, at *131-4, citing Eickelberger v. Eickelberger
(1994), 93 Ohio App.3d 221, 226 and Smith v. Smith (1993),91 Ohio App.3d 248, 252-253. See, also, Neville v. Neville,
syllabus.
[12] Id.