OPINION
{¶ 1} Appellant, Larry W. Hanifon, appeals the judgment entered by the Lake County Court of Common Pleas, Domestic Relations Division. In its final judgment entry of divorce, the trial court ordered appellant to pay appellee, Karen L. Hanifon, $580, per month, in spousal support.
 {¶ 2} The parties were married in 1975. On April 15, 2002, appellee filed a complaint for divorce. Appellant filed an answer to appellee's complaint. In the same pleading, he filed a counterclaim for divorce. At the initial stages of this action, appellant was ordered to vacate the marital residence. Further, he was ordered to pay temporary spousal support in the amount of $1,500 per month.
 {¶ 3} The matter proceeded to an evidentiary hearing before the magistrate. The following facts were set forth at the hearing.
 {¶ 4} In 1984, the parties' only children, twin girls, were born. The girls were eighteen years old when the complaint was filed, and they graduated from high school shortly thereafter. There were limited issues concerning the girls at the trial court level, and there are no significant issues involving the children on appeal.
 {¶ 5} Appellee testified she works full time for the Madison Police Department, where she earns $12.73 per hour. In addition, she works about fourteen hours a week at a Blockbuster video store. Appellee has a retirement account worth approximately $46,800.
 {¶ 6} At the time of the hearing, appellee lived in the marital residence with one of her daughters. In addition, the second daughter would stay with her during college breaks. Also, appellee had a boyfriend who would spend time at the residence, but appellee testified he did not spend the night at the residence or live with her. Appellee's testimony indicated she had reasonable living expenses. In addition, she pays $50 per month on a college loan for her daughter.
 {¶ 7} Appellant worked as a security officer at the Perry Nuclear Power Plant, earning about $57,000 per year. He has a pension plan through his employment, which, at the time of the hearing, was valued at about $63,500.
 {¶ 8} After appellant moved out of the marital residence, he began living with his sister in Ashtabula, Ohio. He testified that this was a temporary arrangement. Appellant's living expenses were generally reasonable. The magistrate found an exception was his truck payment of nearly $600 per month. Appellant purchased the $33,000 truck while the parties were separated, following an accident with his prior truck.
 {¶ 9} The marital residence was encumbered with three mortgages, which together totaled nearly $70,000. The magistrate determined the value of the marital residence was $91,500.
 {¶ 10} The parties had a significant amount of credit card and other consumer debt. The magistrate determined there was about $26,776 in consumer debt at the time of separation. In addition, the magistrate determined that this debt increased to $56,130 at the time of the hearing, due, for the most part, to the unilateral actions of appellant. Appellant testified that he used credit cards to pay for his expenses during the divorce because he had to pay $1,500 in spousal support.
 {¶ 11} In April 2004, the magistrate issued his detailed decision. The decision split the parties' debts and assets. The magistrate awarded appellee the marital residence. In addition, the magistrate ruled that appellant could retain his entire pension. The magistrate split the marital portion of the consumer debt between the parties. However, the magistrate ordered that appellant was responsible for the debt he incurred following the parties' separation. The magistrate's decision required appellant pay appellee $580, per month, in spousal support. Also, the magistrate ordered appellee to consolidate the three mortgages on the marital residence and remove appellant's name from them. However, the magistrate gave appellee seventy-two months to obtain refinancing to consolidate these mortgages. Lastly, the magistrate determined that appellant should be credited for overpayment of the temporary spousal support payments.
 {¶ 12} Pursuant to Civ.R. 53, appellant filed objections to the magistrate's decision. The trial court held a hearing on appellant's objections. Thereafter, the trial court issued a judgment entry denying appellant's objections to the magistrate's decision and adopting the magistrate's decision. Finally, on October 18, 2004, the trial court issued its final judgment entry of divorce, which was consistent with its prior judgment entry and the magistrate's decision. Appellant has timely appealed the final judgment entry to this court.
 {¶ 13} Appellant raises the following assignment of error:
 {¶ 14} "The trial court erred to the prejudice of Defendant in the award to Plaintiff of spousal support coupled with the order that Plaintiff was under no obligation to refinance the marital residence for the same period."
 {¶ 15} The trial court has significant discretion to award spousal support to one of the parties in a domestic relations proceeding, provided the award is "`appropriate and reasonable.'"[1] The trial court's decision will not be reversed by a reviewing court unless the trial court abused its discretion.[2] "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"[3]
 {¶ 16} A court is to consider the following factors when determining if a spousal support award is "reasonable and appropriate":
 {¶ 17} "(a) [T]he parties' income, (b) the parties' earning abilities, (c) the parties' ages and health, (d) the parties' retirement benefits, (e) the duration of the marriage, (f) the responsibilities of a party as custodian of a minor child, (g) the standard of living established during the marriage, (h) the parties' education, (i) the parties' assets and liabilities, (j) each party's contribution to the other's education and career, (k) the needs of the party seeking support to acquire work skills/education, (l) the tax consequences, (m) a party's diminished earning capacity as a result of his or her marital responsibilities, (n) any other factor the court finds relevant and equitable."[4]
 {¶ 18} In this matter, the trial court ordered appellant to pay $580, per month, in spousal support for seventy-two months. For the following reasons, we conclude the trial court's spousal support award was reasonable and appropriate.
 {¶ 19} There was a disparity between the incomes of the parties. The magistrate noted that appellant's income accounted for about sixty-five percent of the marital income. Appellee testified that she took a second job to meet her financial obligations. She testified that the second job was physically demanding due, in part, to her heart condition.
 {¶ 20} The trial court noted that the parties had been married twenty-six years prior to their separation. Under R.C.3105.18(C)(1)(e), this is a factor the trial court is required to consider. A spousal support order lasting six years is reasonable for a marriage that lasted more than twenty-five years.
 {¶ 21} The magistrate also found that there would be beneficial tax consequences by requiring appellant to pay spousal support rather than having him assume a greater portion of the marital debt. This finding was warranted under R.C.3105.18(C)(1)(l).
 {¶ 22} Finally, the amount of spousal support, itself, is not unreasonable. Appellant is obligated to pay $6,960 per year. When compared to his income of over $57,000, the support order is not excessive.
 {¶ 23} The trial court did not abuse its discretion in issuing the spousal support order in this matter.
 {¶ 24} In addition to his objection to the order of spousal support, appellant also contends the order allowing appellee seventy-two months to obtain refinancing for the marital residence is unreasonable.
 {¶ 25} The Supreme Court of Ohio has held that a trial court "should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage."[5] We agree that it is generally favorable to provide closure by separating the parties' joint debts and assets. However, due to the unique circumstances of this case, specifically the excess credit card debt caused by appellant, the trial court acted within its discretion when it permitted appellee to have seventy-two months to refinance the marital residence.
 {¶ 26} The trial court noted that appellant increased the parties' consumer debt by nearly $30,000 while this action was pending at the trial court level. Moreover, the magistrate found that this action was intentional. Specifically, the magistrate found:
 {¶ 27} "[Appellant's] rationale for the increased credit charges is not credible. In fact, it indicates a pattern to this Magistrate that is troubling. It has been clear through the course of this action that [appellant] has opposed allowing [appellee] to retain or refinance into the marital residence. [Appellant] also opposes any financial assistance to [appellee]. [Appellant] believes [appellee] is at fault and thus he should be compensated. Thus it appears to the Magistrate that [appellant] has orchestrated a scenario of these charges to effect retribution on [appellee] — to punish her financially one way or the other — by encumbering her credit or by forcing liquidation of the asset. Liquidation of the residence is not a cost effective option considering both the desires of the parties; and the net equity that would be received from sale."
 {¶ 28} As a result of appellant's actions, the magistrate specifically found appellee may have difficulty obtaining financing because of this debt, due to her credit report containing significant consumer debt. Thus, the trial court gave appellee up to seventy-two months to obtain refinancing, with the anticipation that, over time, some of the consumer debt would be paid down and, then, it would be easier for appellee to obtain refinancing.
 {¶ 29} The trial court did not abuse its discretion in allowing appellee seventy-two months to obtain financing to consolidate the mortgages on the marital residence.
 {¶ 30} Appellant's assignment of error is without merit.
 {¶ 31} The judgment of the trial court is affirmed.
Rice, J., O'Toole, J., concur.
[1] Bandish v. Bandish, 11th Dist. No. 2002-G-2489,2004-Ohio-3544, at ¶ 14, citing Glass v. Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103, at *6.
[2] Jenkins v. Jenkins, 11th Dist. No. 2002-P-0121,2004-Ohio-3332, at ¶ 42, citing Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67.
[3] (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
[4] Hawley v. Hawley, 11th Dist. No. 2003-P-0096,2004-Ohio-3189, at ¶ 14, citing R.C. 3105.18(C)(1).
[5] Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, paragraph two of the syllabus.