OPINION
{¶ 1} Appellant, Steven S. Eva, appeals the judgment entered by the Portage County Court of Common Pleas. The trial court entered a divorce decree terminating appellant's marriage to appellee, Karen Eva, n.k.a. Karen Lisick. In its judgment entry, the trial court ordered appellant to pay spousal support to appellee.
 {¶ 2} The parties were married in Buffalo, New York in 1987. Both parties were 25 years old at the time of the marriage. No children were born during the marriage. *Page 2 
 {¶ 3} Prior to the marriage, appellee received her college degree in materials and logistics management from Michigan State University. Appellee worked for an industrial corporation for 17 years as an operations systems analyst. From 2001 to 2003, appellee worked for other companies in a similar capacity. In 2003, appellee left the corporate world, and the parties started a house-cleaning business. Appellee was the operator of the business, and she did a variety of tasks in that capacity, including: scheduling, personnel management, bookkeeping, and maintenance of equipment. Appellant testified that appellee earned about $60,000 per year, on average, during the marriage. The parties sold the business in December 2006, the same month the complaint for divorce was filed.
 {¶ 4} Appellee was diagnosed with multiple sclerosis in 1995 or 1996. She testified that this condition never caused her to miss significant time from work. When appellee was first diagnosed, her condition was described as benign. However, she testified that, at the time of trial, she was "relapsing" or "remitting," which she described as the stage most people with multiple sclerosis are in. At trial, appellee testified that she has been losing strength in the right side of her body. Also, she testified that there is scarring on her brain and spinal cord. She also reported numbness on the right side of her body when she sits for too long, that she has muscle spasms, and that her condition affects her sleep. Finally, she testified that she is suffering from depression as a result of the condition.
 {¶ 5} Appellant completed his college education at Cleveland State University from 1988 through 1992. Marital funds were used to pay for appellant's education. In 2003, appellant took an internship to become a nursing home administrator. At the time *Page 3 
of the trial, appellant testified he earned approximately $90,000 per year as a nursing home administrator.
 {¶ 6} Later in their marriage, the parties lived in a residence in Twinsburg, Ohio. In August 2006, appellant moved out of the Twinsburg residence and into an apartment in Ravenna, Ohio. In December 2006, appellant filed a complaint for divorce.
 {¶ 7} Prior to trial, many issues were settled by stipulation of the parties. For example, the parties reached an agreement regarding the division of the majority of their assets, including the marital residence, their personal property, their vehicles, and their retirement accounts. The matter proceeded to a trial, primarily on the issue of spousal support. Both parties testified. Also, Dr. Rod Durgin testified as an expert witness on behalf of appellant. Dr. Durgin is a vocational economic specialist, who interviewed appellee about her employability. A substantial amount of the testimony at trial concerned the effect of appellee's multiple sclerosis on her ability to work.
 {¶ 8} The trial court issued a final judgment entry and decree of divorce. The trial court awarded spousal support to appellee in the amount of $1,850 per month, plus a two-percent processing fee, until the marital residence sold. Following the sale of the marital residence, appellant's spousal support obligation would increase to $2,550 per month, plus a two-percent processing fee. The trial court did not provide a termination date for appellant's spousal support obligation; instead, the court characterized the spousal support as "permanent." The trial court did indicate the order would terminate upon the death of either party or upon appellee's cohabitation with an unrelated male. The trial court retained jurisdiction to modify the spousal support award.
 {¶ 9} Appellant raises two assignments of error. His first assignment of error is: *Page 4 
 {¶ 10} "The trial court erred by ordering husband to pay wife permanent spousal support."
 {¶ 11} In a domestic-relations proceeding, the trial court has significant discretion to award spousal support to one of the parties provided the award is "`appropriate and reasonable.'" Bandish v.Bandish, 11th Dist. No. 2002-G-2489, 2004-Ohio-3544, at ¶ 14, citingGlass v. Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103, at *6. The trial court's decision will not be reversed by a reviewing court unless the trial court abused its discretion.Jenkins v. Jenkins, 11th Dist. No. 2002-P-0121, 2004-Ohio-3332, at ¶ 42, citing Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. (Citations omitted.)
 {¶ 12} A court is to consider the following factors when determining if a spousal support award is "reasonable and appropriate":
 {¶ 13} "(a) [T]he parties' income, (b) the parties' earning abilities, (c) the parties' ages and health, (d) the parties' retirement benefits, (e) the duration of the marriage, (f) the responsibilities of a party as custodian of a minor child, (g) the standard of living established during the marriage, (h) the parties' education, (i) the parties' assets and liabilities, (j) each party's contribution to the other's education and career, (k) the needs of the party seeking support to acquire work skills/education, (l) tax consequences, (m) a party's diminished earning capacity as a result of his or her marital responsibilities, and (n) any other factor the court finds relevant and equitable." Hawley v.Hawley, 11th Dist. No. 2003-P-0096, 2004-Ohio-3189, at ¶ 14, citing R.C. 3105.18(C). *Page 5 
 {¶ 14} We will initially address whether the trial court abused its discretion by awarding "permanent" spousal support. "Generally, a termination date of a spousal support award is favored." Harrison v.Harrison, 11th Dist. No. 2004-A-0003, 2005-Ohio-6293, at ¶ 22, citingKunkle v. Kunkle, 51 Ohio St.3d at 69. In Kunkle v. Kunkle, the Supreme Court of Ohio held:
 {¶ 15} "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."Kunkle v. Kunkle, supra, at paragraph one of the syllabus.
 {¶ 16} In this matter, the length of the marriage was 19 years. Next, we note that both parties have college degrees. Also, appellee was not a "homemaker" spouse; instead, she had significant experience working as an operations systems analyst and the additional experience of running a small business. Regarding the ages of the parties, at the time of the divorce trial, appellant was 45 years old, and appellee was 44 years old.
 {¶ 17} The factor given the most weight by the trial court was appellee's multiple sclerosis. Health of the parties is a valid consideration when determining the length of a spousal support order.Kunkle v. Kunkle, supra. See, also, R.C. 3105.18(C)(1)(c). At the time of trial, both appellant and Dr. Durgin testified that, despite her medical *Page 6 
condition, appellee was able to work. In addition, appellee testified that she was able to work. The following colloquy occurred during the cross-examination of appellee:
 {¶ 18} "Q. With regards to your resume and your testimony that you're presently looking for work —
 {¶ 19} "A. Uh-huh.
 {¶ 20} "Q. — as you sit here today, you have no prohibition from a physician stating that you cannot work. Is that right?
 {¶ 21} "A. That's right.
 {¶ 22} "Q. Okay. And as a result of that, you are actively seeking employment, correct?
 {¶ 23} "A. I have to, yes."
 {¶ 24} Later, appellee was questioned by the court:
 {¶ 25} "THE COURT: [Y]ou do agree with the expert witness that you are employable; and that is, your current health situation does not prohibit you from some type of work.
 {¶ 26} "[Appellee]: Correct. Yeah, I — — yes. Correct.
 {¶ 27} "THE COURT: You are capable of doing some work.
 {¶ 28} "[Appellee]: Yes."
 {¶ 29} At the time of the trial, appellee was unemployed. However, the evidence presented at trial demonstrated that appellee's unemployment was not due to her multiple sclerosis. Appellee testified that she had sent out 200 resumes and was actively looking for employment. For whatever reason, appellee's job search had not proven successful by the time of the trial. *Page 7 
 {¶ 30} Next, we will address the effect of appellee's multiple sclerosis on her future employability. In its judgment entry, the trial court held, "based on all of the testimony, [appellant's] ability to increase his income in the future is much greater than that of [appellee], due primarily to her Multiple Sclerosis."
 {¶ 31} Dr. Durgin, appellant, and appellee all testified that multiple sclerosis is an unpredictable disease, in that some people with the condition are able to continue to be employable, while others are more affected by the disease. Appellee had worked for ten years with multiple sclerosis without missing any significant time from work due to the condition. Most recently, appellee was employed only six months before the trial. While appellee testified that she was employable at the time of trial, she also testified that many of her symptoms had become more severe. Further, all three witnesses testified to the unpredictable nature of multiple sclerosis. Thus, while there was no evidence that appellee's condition would absolutely deteriorate to the point she would be unemployable, all the witnesses recognized that this was a possibility.
 {¶ 32} We note that the trial court reserved jurisdiction to modify the spousal support award. In another case concerning a "permanent" award of spousal support, this court has held, "[s]ince the trial court retained jurisdiction over the issue of spousal support, it did not abuse its discretion by failing to state a termination date for the award." Harrison v. Harrison, 2005-Ohio-6293, at ¶ 23. Likewise, in this matter, the fact that the trial court retained jurisdiction to modify the award suggests that the award may not be "permanent," in that the trial court has jurisdiction to modify, or eliminate, the award should there be an appropriate change of circumstances pursuant to R.C. 3105.18(F). *Page 8 
 {¶ 33} The trial court did not abuse its discretion by failing to state a termination date for the spousal support award.
 {¶ 34} Next, we will address the amount of the spousal support award. At trial, appellant testified he was earning approximately $90,000 per year. Appellee was unemployed. Thus, on its face, the amount of spousal support, $2,550 per month, was not unreasonable. Further, while the trial court did not make a specific finding as to whether appellee's unemployment was voluntary or involuntary, it appears the trial court concluded that appellee's unemployment was involuntary, as the trial court found that appellee "made a diligent effort to become employed during the period since the sale of the parties' business and that she sent out approximately 200 resumes searching for employment." As such, the trial court was not required to impute income to appellee for the purposes of calculating spousal support. See, e.g., Moore v. Moore, 166 Ohio App.3d 429, 2006-Ohio-1431, at ¶ 5-8.
 {¶ 35} The trial court did not abuse its discretion in determining the amount of spousal support.
 {¶ 36} Finally, we will address the trial court's decision to retain jurisdiction. "`The decision whether to retain jurisdiction to modify a spousal support award is within the trial court's discretion.'" (Citations omitted.) Shehab v. Shehab, 11th Dist. No. 2002-P-0122,2004-Ohio-5460, at ¶ 16. We agree with the trial court that the facts of this case, specifically appellee's medical condition, present a valid reason for the trial court retaining jurisdiction over the issue of spousal support. However, we note the following language in the trial court's judgment entry: "[i]n this Court's reservation of jurisdiction over the issue of spousal support, employment by Wife shall be basis for review of the *Page 9 
spousal support award herein stated." As stated, this sentence could be interpreted to mean that the only basis for the trial court to review the spousal support award would be appellee's employment. However, we believe the wording of this sentence was the result of an inadvertent typographical error, in that we do not believe the trial court intended to limit its ability to modify the spousal support award solely based on the factor of appellee's future employment. Instead, we note that R.C. 3105.18(F) provides that any relevant factor can qualify as a change in circumstances for the purpose of modifying a spousal support order, including "any increase or involuntary decrease in [a] party's wages, salary, bonuses, living expenses, or medical expenses." The fact that the trial court intended to follow this statute is evinced by the following language from the court's judgment entry:
 {¶ 37} "It is ordered that the Court retains jurisdiction under R.C. 3105.18(E)(1) to modify the amount of support to be paid and to modify the terms of support to be paid as provided in R.C. 3105.18(F) if there has been a change in circumstances of the parties, including, but not limited to any increase or involuntary decrease in the parties' wages, salaries, bonuses, [or] living or medical expenses[.]"
 {¶ 38} Thus, in the trial court's discretion, it may modify the spousal support award based upon any qualifying change in circumstances pursuant to R.C. 3105.18(F).
 {¶ 39} The trial court followed the proper procedures for reserving jurisdiction pursuant to R.C. 3105.18(E). Moreover, the trial court clearly stated its intention to follow R.C. 3105.18(F) when deciding whether to make any future modifications to the award. As a result, we conclude that the trial court did not abuse its discretion by retaining jurisdiction over the issue of spousal support. *Page 10 
 {¶ 40} Appellant's first assignment of error is without merit.
 {¶ 41} Appellant's second assignment of error is:
 {¶ 42} "The trial court lacked jurisdiction to grant a divorce in this action because the plaintiff failed to establish that he was a resident of the state of Ohio for more than six months preceding the filing of the complaint for divorce."
 {¶ 43} In his complaint, appellant alleged that he had been a resident of the state of Ohio for more than six months and a resident of Portage County for more than 90 days. In her answer, appellee denied this allegation due to lack of sufficient information. However, the trial court indicated that the parties had agreed to several issues prior to trial. Specifically, the court indicated that the primary disputed issue was the employability of appellee and the effect of that determination on spousal support. Presumably, therefore, the parties stipulated to the fact that appellant had lived in Ohio for six months prior to the filing of the divorce complaint.
 {¶ 44} Moreover, the evidence presented at trial suggests that appellant had, in fact, lived in Ohio for more than six months prior to the filing of the complaint. The complaint was filed on December 6, 2006. Appellant testified that he had lived in an apartment in Ravenna, Ohio since August 2, 2006. Prior to moving to Ravenna, appellant testified that he lived in the marital residence in Twinsburg, Ohio. Appellee testified that she had lived in the marital residence for eight years. Taken together, this evidence suggests appellant lived in Ohio for the six months preceding the filing of the divorce complaint. Further, there was no evidence presented at trial that appellant lived anywhere other than Ohio in the six months preceding the filing of the complaint. *Page 11 
 {¶ 45} We consider appellant's argument to lack good faith in (1) asserting he lived in Ohio for the six months preceding the filing of the complaint; (2) agreeing with the trial court and appellee that there were only limited contested issues for trial, mainly spousal support; and then (3) arguing on appeal that the trial court did not have jurisdiction.
 {¶ 46} Appellant's second assignment of error is without merit.
 {¶ 47} The judgment of the trial court is affirmed.
 CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur. *Page 1