[Cite as *State v. Lett*, 2019-Ohio-532.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106973

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANTHONY LETT**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-608959-A

**BEFORE:** E.T. Gallagher, P.J., Celebrezze, J., and Headen, J.

**RELEASED AND JOURNALIZED:** February 14, 2019

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Anna M. Faraglia
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Anthony Lett, appeals his convictions and sentence and claims the following three errors:

> 1. The trial court failed to engage in consecutive sentencing analysis when imposing four consecutive three-year firearm specifications.
>
> 2. Lett's convictions are against the manifest weight of the evidence.
>
> 3. The evidence is insufficient to convict Lett of felonious assault on Cook.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

### I.    Facts and Procedural History

{¶3} Lett was charged with one count of rape, one count of attempted murder, three counts of kidnapping, two counts of aggravated robbery, two counts of aggravated burglary, and three counts of felonious assault.  Counts 1 through 11 included one- and three-year firearm

specifications, and all the counts included notice of prior conviction and repeat violent offender specifications. One of the kidnapping counts also included a sexual motivation specification. Following discovery, pretrials, and the appointment of new counsel, the case proceeded to a jury trial.

{¶4} Candice Cook testified that on the night of April 24, 2016, she was looking forward to a quiet evening with her husband, Qumar Strowder, because her mother had taken their children for the night. However, as Cook stepped out of the shower, she heard Strowder answer a knock at the door. When she came downstairs, she found Strowder sitting at the dining room table with a neighbor from across the street that she knew as "Face." Face, later identified as Lett, was accompanied by codefendant, James Underwood, and a woman Cook knew as "Buns." Lett was drinking a fifth of vodka.

{¶5} After sitting for awhile, Lett asked, "What was the take for today?" (Tr. 321.) Cook understood the question to mean, "[H]ow much money did you make today?" Although it was a Sunday, Strowder owned a home remodeling business and made service calls on weekends. Cook tapped Strowder's leg under the table to signal to him that she wanted their guests to leave. When Cook asked them to leave, Underwood and Buns pulled out guns and pointed them at Strowder and Cook. Lett stood up, put on a pair of black gloves, and ordered his associates to take Strowder and Cook upstairs to their bedroom.

{¶6} Underwood pushed Strowder and Cook up the stairs at gunpoint. When they reached the bedroom, Lett emptied Strowder's wallet, and Buns asked Strowder for his credit card PIN numbers. (Tr. 324.) Lett also searched the room for cash, but found none. Lett told Underwood and Buns to cover Strowder and Cook with a blanket and ordered Cook to take off her clothes. Cook removed her pants but retained her shirt. Thereafter, Lett instructed

everyone to move to the basement. Lett walked behind Cook, pressing a gun into her side. Underwood walked behind Strowder, brandishing a gun. Cook stopped on the stairs to block everyone from proceeding so Lett pushed Cook, causing her to fall down the stairs and hit a window at the bottom of a landing leading to the first floor. (Tr. 328.) Cook got up and continued to the first floor. (Tr. 328.)

{¶7} They passed through the kitchen on the way to the basement stairs. As Strowder passed by the side door of the house, he called his dog over in an effort to distract the intruders. Strowder quickly unlocked the side door while Lett was distracted with Cook. Underwood observed the move and gave Strowder a look as if to say, "[I]f you touch that door again, I'm going to shoot you." (Tr. 515.) Strowder noticed that Underwood was nervous around the dog and again called his dog. As he did so, Strowder opened the side door and ran out. Underwood fired a shot at Strowder. Although Strowder was hit, he continued running and did not look back because he heard Lett tell Underwood to "put another one in him." (Tr. 517.)

{¶8} Strowder ran up East 127th Street to Harvard Avenue where he sought help at a gas station. The gas station attendant called 911. EMS arrived shortly thereafter and transported Strowder to University Hospitals, a level one trauma center. Officer Eric Newton, who responded to the gas station, observed a pool of blood on the floor of the gas station. Newton learned from the attendant that Strowder had been shot elsewhere and that the gas station was not the crime scene. Newton heard over his radio that a panic button on a home security system had been activated a few blocks away. Newton surmised that the shooting victim may have walked to the gas station from the nearby home. Therefore, Newton responded to the home on East 127th Street, where the panic button had been activated.

{¶9} Meanwhile, Lett continued to force Cook into the basement and ordered her to remove the rest of her clothes. Lett attempted to rape Cook, but Underwood interrupted and said, "I think I got him." (Tr. 331.) Cook heard Lett tell Underwood to "put another one in him." (Tr. 331.) Thereafter, Lett ran upstairs, apparently to see if Strowder had been shot. (Tr. 332.) While Lett was gone, Cook broke through a basement window and escaped, but not without sustaining deep lacerations all over her body. Cook got into her car and circled the block looking for Strowder. When she could not find him, she drove herself to South Pointe Hospital. (Tr. 334.)

{¶10} A security guard at the hospital refused to admit Cook because she was naked. After she put on the blood soaked shirt she was using to stop her arm from bleeding, she was allowed to enter the hospital. Emergency room staff sutured deep cuts in Cook's arm and buttocks and inserted staples for a laceration in her head. Thereafter, she was taken by Metro Life Flight to MetroHealth Medical Center for further treatment.

{¶11} Officer Brandon Melbar responded to the home on East 127th Street in response to a 911 call. At the scene, he observed blood in multiple locations inside and outside the house. He also found a 9 mm shell casing by the side door and a bloody basement window that had been broken. Officer Melbar concluded that "some type of struggle had happened inside the home" because "there was a bunch of bank cards inside the home" and "[t]here was no one inside the home." (Tr. 452.)

{¶12} At the time of the incident, Cook and Strowder did not know Lett's first name; they knew him by his nickname, "Face." However, they knew Face's last name was Lett. Officer Melbar searched a police database for a person with the nickname "Face" and the last name Lett. The search yielded the name Anthony Lett, and police created photo arrays with Lett's picture.

Cook and Strowder separately and independently identified Lett as the ringleader of the group that robbed and assaulted them in their home.

{¶13} The jury found Lett guilty of one count of attempted murder, two counts of kidnapping, two counts of aggravated robbery, two counts of aggravated burglary, and three counts of felonious assault. The jury acquitted Lett of the rape charge and the kidnapping charge that included a sexual motivation specification. The court sentenced Lett to seven years on each of his kidnapping, aggravated robbery, aggravated burglary, and felonious assault convictions, and eight years on his attempted murder conviction, to be served concurrently for a total of eight years. The court ordered the one- and three-year firearm specifications attendant to four of the counts to be served consecutively and the remaining firearm specifications to be served concurrently, for a total of 12 years on the firearm specifications. The court ordered the 12-year sentence on the firearm specifications to be served consecutive to the eight years on the underlying charges for an aggregate 20-year prison term. Lett now appeals and raises three assignments of error, which we discuss out of order for simplicity's sake.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶14} In the third assignment of error, Lett argues there was insufficient evidence to support his felonious assault conviction against Cook as alleged in Count 5 of the indictment.

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} Lett argues there is insufficient evidence to support his felonious assault conviction against Cook because the jury acquitted him of the rape and kidnapping offenses he was alleged to have committed against her. However, rape and kidnapping are separate offenses requiring proof of elements unrelated to felonious assault. As long as there is sufficient evidence to support all the elements of Lett's felonious assault conviction, his conviction must be affirmed regardless of his acquittals on the rape and kidnapping charges.

{¶17} Lett was convicted of felonious assault against Cook in violation of R.C. 2903.11(A)(1), which states, in relevant part, that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." R.C. 2901.01(A)(5) defines "serious physical harm," as including, among other things, "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement." R.C. 2901.22(B) defines "knowingly," in relevant part, as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

{¶18} Cook sustained deep cuts on her arms, legs, buttocks, and head when she jumped through the basement window to escape from Lett and his associates. Cook testified that she received over 100 stitches to close the lacerations on her arm and buttocks and received four staples to close the wound on her head. She authenticated photographs of the scars she now has on her arms, legs, and buttocks as a result of her escape through the basement window.

Therefore, there is sufficient evidence that Cook suffered serious physical harm as a result of the April 24, 2016 incident.

{¶19} With respect to the knowingly element of the offense, it is well established that "'a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Wilks*, Slip Opinion No. 2018-Ohio-1562, ¶ 116, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). And, "'[i]t is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *State v. Parker*, 9th Dist. Lorain No. 15CA010750, 2016-Ohio-5663, ¶ 20, quoting *State v. Losey*, 23 Ohio App.3d 93, 96, 491 N.E.2d 379 (10th Dist.1985).

{¶20} Although Lett did not directly cause Cook's injuries, his conduct created the circumstances that caused her to jump through the basement window. Cook explained:

> I was running around our basement trying to find a hiding place and then something dawned on me, like if they come down here and find you, you dead. They going to kill you. And I couldn't find nowhere to hide * * *.

> And I didn't want to go out the door behind them, and I ended up jumping through the basement window.

(Tr. 330, 332.) It was foreseeable that Cook would try to escape from the basement once she was alone since Lett threatened her with a gun, pushed her down the stairs, and attempted to rape her. She also knew that Underwood fired a shot at her husband a few minutes before, and Lett told Underwood to "put another one in him." And it is logical that Cook would escape through a basement window rather than attempt to come up the basement stairs since her captors were standing at the top of the stairs with their guns. Lett may not have foreseen the precise injury

Cook would sustain as a result of his actions, but he had to know she would try to escape, and her flight through the window was within the scope of the risk created by his conduct. Therefore, there was sufficient evidence that Lett knowingly caused serious physical harm to Cook as a result of his actions.

{¶21} The third assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶22} In the second assignment of error, Lett argues his convictions are against the manifest weight of the evidence.

{¶23} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶24} Lett argues his convictions are against the manifest weight of the evidence because Cook and Strowder were both convicted felons and therefore were not truthful. He also claims there were major discrepancies between their testimonies that cast doubt on their credibility. As

an example, Lett notes that Cook claimed one of the perpetrators left the house to buy more alcohol while Strowder testified that nobody left the house to go to a store. However, Lett mischaracterizes both victims' testimony. Cook testified that Underwood left the house to go to a store, but she did not know if he went to buy alcohol. (Tr. 358.) And Strowder did not deny that someone left the house to go to a store; he testified he did not remember whether someone left the house during the incident. Strowder testified:

> Q: So if someone testified that the male got up at some point while he was there and left out to go to the store and came back, you don't recall that?

> A: Sir, two years ago after all this ordeal I've been through, I can't remember exact step for step what transpired.

(Tr. 553.)

{¶25} Whether Underwood left the victims' home and went to a store is an insignificant detail in the scheme of events. With respect to the relevant facts, Strowder and Cook's testimony was remarkably consistent. They both testified that two men and one women entered their house, made small talk, and pulled out guns when they were asked to leave. They both described how Lett gave commands to the other two assailants, who forced Strowder and Cook upstairs to their bedroom to look for cash. They consistently stated that Lett and his associates emptied Strowder's wallet and asked for the PIN numbers to Strowder's credit cards. And they both described their walk back down the stairs on their way to the basement when Cook stalled and was pushed down the stairs. They also both recounted how Strowder escaped out the side door and was shot.

{¶26} Furthermore, physical evidence found at the scene corroborates the victims' testimony. Officer Melbar testified that when he arrived on the scene he found a broken basement window, a shell casing by the side door, and blood on both the inside and outside of the

house. He also found credit cards strewn about inside the house. His testimony corroborates the victims' claims that Lett emptied Strowder's wallet looking for cash and credit cards, that Strowder was shot while fleeing out the side door, and that Cook was cut while escaping from the basement window.

{¶27} Moreover, just because a witness is a convicted felon does not mean he or she automatically lacks credibility. The weight to be given to the witness's testimony is a matter for the jury to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury was in the best position to determine the credibility of the witnesses, and we find no reason to conclude that the jury lost its way or created such a manifest miscarriage of justice that the conviction must be reversed.

{¶28} Therefore, the second assignment of error is overruled.

### C. Consecutive Sentences on Firearm Specifications

{¶29} In the first assignment of error, Lett argues the trial court erred in imposing consecutive sentences on four firearm specifications without making the findings required by R.C. 2929.14(C)(4) for the imposition of consecutive sentences. However, the trial court imposed consecutive sentences on firearm specifications instead of the underlying convictions. "'A specification is a sentencing enhancement, not a separate criminal offense.'" *State v. Nelson*, 2017-Ohio-5568, 93 N.E.3d 472, ¶ 85 (8th Dist.), quoting *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 47 (8th Dist.). The requirements set forth in R.C. 2929.14(C)(4) for the imposition of consecutive sentences on felony convictions do not apply to penalty-enhancing specifications. *Nelson* at *id*. Therefore, the requirements of R.C. 2929.14(C)(4) are inapplicable to sentences imposed on firearm specifications.

**{¶30}** R.C. 2929.14(B)(1)(b) governs prison terms on firearm specifications and generally prohibits a trial court from imposing more than one prison term for firearm specifications on felony convictions "committed as part of the same act or transaction." However, R.C. 2929.14(B)(1)(g) provides the following exception:

> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * attempted murder, aggravated robbery, [or] felonious assault, * * * and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

Thus, in cases involving attempted murder, aggravated robbery, and felonious assault, the sentencing court must impose a prison term on at least two firearm specifications and may, in its discretion, impose additional terms for other applicable specifications without considering whether the conduct was part of the same act or transaction. *Nelson* at ¶ 81; *see also State v. Lewis*, 8th Dist. Cuyahoga Nos. 105631 and 105632, 2017-Ohio-9172, ¶ 15-16; *State v. Fortune*, 2015-Ohio-4019, 42 N.E.3d 1224, ¶ 16, 19 (11th Dist.).

**{¶31}** Lett was convicted of one count of attempted murder, two counts of aggravated robbery, and two counts of felonious assault in addition to other convictions. The attempted murder, aggravated robbery, and felonious assault convictions included one- and three-year firearm specifications. Therefore, the court was required by R.C. 2929.14(B)(1)(g) to run at least two of the three-year firearm specifications consecutively and was free, in its discretion, to impose prison time on additional specifications that fell within the exception provided in R.C. 2929.14(B)(1)(g). We, therefore, find no error in

the trial court's judgment imposing consecutive prison terms on the four firearm specifications attendant to Lett's attempted murder, aggravated robbery, and felonious assault convictions.

**{¶32}** The first assignment of error is overruled.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
RAYMOND C. HEADEN, J., CONCUR