[Cite as *State v. Grimes*, 2020-Ohio-4357.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                     |
|--------------------------|---|-----------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.    |
|                          | : | Hon. John W. Wise, J.       |
| Plaintiff-Appellee       | : | Hon. Craig R. Baldwin, J.   |
|                          | : |                             |
| -vs-                     | : |                             |
|                          | : | Case No. 2019CA0103         |
| BRANDON A. GRIMES        | : |                             |
|                          | : |                             |
| Defendant-Appellant      | : | OPINION                     |

CHARACTER OF PROCEEDING:    Criminal appeal from the Richland County
Court of Common Pleas, Case No.
2018CR1053

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    September 4, 2020

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

GARY D. BISHOP          APRIL F. CAMPBELL
Prosecutor          545 Metro Place South, Ste.100
By: JOSEPH C. SNYDER          Dublin, OH 43017
Assistant Prosecutor
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant Brandon Grimes appeals from the August 20, 2019 and November 1, 2019 judgment entries of the Richland County Court of Common Pleas. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On December 11, 2018, appellant was charged with three counts of felonious assault in violation of R.C. 2903.11(A)(2), three counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), three counts of aggravated vehicular assault in violation of R.C 2903.08(A)(2)(b), one count of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and one count of operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(d).

{¶3} Appellee dismissed the three aggravated vehicular assault counts based upon R.C. 2903.08(A)(2)(b) and the OVI count based upon R.C. 4511.19(A)(1)(a). Appellant pled guilty to one count of OVI, a violation of R.C. 4511.19(A)(1)(d). Appellant waived his right to a jury trial. The trial court conducted a bench trial on July 30, 2019 for three counts of felonious assault and three counts of aggravated vehicular assault.

{¶4} Ty'asiyah Osborne ("Osborne") was with Jada Barrett ("Barrett') and Jacqueline Burden ("Burden") the night of November 6, 2018, when she picked Burden up from work at Richland Mall at approximately 10:00 p.m. En route to picking up Burden's daughter from the babysitter and while Osborne was driving Burden's Toyota Camry, Osborne noticed a black car, without its lights on, driving recklessly towards them. Osborne initially thought nothing of it, but pulled into the driveway of the babysitter's house on Hillside Circle. Osborne identified the car as appellant's black Impala; however,

Osborne did not know appellant prior to the incident.  The Impala backed up and parked directly behind the bumper of the Camry.  Osborne saw two individuals in the car and observed one of the individuals reaching for something.  Osborne stated she was scared because she did not know who the person in the Impala was or what they could be reaching for.  Osborne then pulled forward and drove through the neighbor's grass in order to get away from the Impala.  As she pulled onto the street, the black Impala "came up beside us, bumping us, like smacking our car."  Osborne testified the Impala hit or "rammed" the side of the Camry three or four times.  Burden called 9-1-1 while the Impala was hitting the Camry.  When listening to the 9-1-1 call, Osborne stated the thuds heard in the background were the Impala hitting the Camry.

{¶5}    The Impala never tried to pass to get around her and Osborne felt it was chasing them.  Osborne made two turns in an attempt to escape, but she inadvertently went down a "no outlet" street as the Impala continued to follow.  Osborne then drove through mud that splashed the Camry.  As Osborne was attempting to get away from the Impala, a blue pickup truck was in front of her.  The truck was going slow and, in her attempt to pass the truck, she hit the truck.  However, there was no damage to the truck or the Camry from her hitting the truck.  Also, as she was trying to get away from the Impala, Osborne hit a sign, causing damage to the front windshield of the Camry.  Osborne identified damage to the side of the Camry as being from the Impala hitting the car and identified several transfers of black paint from the Impala onto the Camry.

{¶6}    Osborne testified she was not hurt the night of the accident, but when she got out of the car, she fell to the ground and vomited.  She experienced neck, back, and head pain after the accident.  She went to the hospital two or three times due to the pain

in her head, but was not discharged with any medication. Osborne sought treatment from a chiropractor for her neck and back as a result of the incident, and she reported her pain as a 10 out of 10. Osborne still experiences pain in her back that she did not have prior to the accident. On cross-examination, Osborne testified she did not call the chiropractor until a medical provider reached out to her the day after the accident to ask if she was injured. Osborne stopped going to the chiropractor after several visits because of her pregnancy.

{¶7} Barrett testified she was in the back seat of the Camry on November 6, 2018. While sitting in the babysitter's driveway, a black Impala rammed towards the Camry. At first, Barrett was not concerned because she thought it was a drunk driver. After the Impala pulled behind them, Barrett got scared because the Impala was following them. Barrett never saw the Impala hit them because she put her head down, but she felt the Impala hit the Camry three times. Barrett believes they briefly sideswiped a blue truck, and then crashed into a sign to get away from the Impala. After the incident, Barrett had a little bit of back pain starting a few weeks after the accident and lasting for a few months.

{¶8} Burden testified she owns the 2004 Toyota Camry that Osborne was driving the night of November 6, 2018. Burden was seated in the passenger seat of the vehicle. Burden noticed a black Impala backing up on the roadway, which she thought was "really weird." Burden thought the driver of the Impala was drunk because it had no headlights on, was coming at them, and went into the grass like it was going to hit them. As they sat in the driveway, the Impala reversed and pulled in right behind them, getting so close to the Camry that Osborne could not back up. They tried to get away from the Impala by

going through the neighbor's yard and made several turns. However, the Impala continued to chase them. Burden testified the Impala tried to run them off the road multiple times.

{¶9} Burden first testified that she could not remember whether the Impala hit the Camry, but knew it was "really really close." However, when Burden later described how the Impala was chasing them and following them, she stated "it had multiple opportunities to pass us and it still wouldn't stop chasing us and stop trying to follow us and basically hit us." Burden continued, "when it got up to the side of the car, it started bumping the car off the road." Burden then confirmed there was an impact between the Impala and her Camry on the passenger's side, but could not remember if the Impala hit the driver's side of the Camry. Burden felt the actions of the driver of the Impala were intentional because the Impala was hitting the car and would not stop chasing them.

{¶10} Burden called 9-1-1 during the incident. When the 9-1-1 call was played in court, Burden was upset, "because I really thought we were going to die." Burden identified on the 9-1-1- call the "thuds" where the Impala struck the Camry.

{¶11} Burden stated that, in the process of trying to get away from the Impala, Osborne lightly swiped a blue truck, but with a significantly less impact than the impact from the Impala. After they got around the blue truck, Osborne ran into a sign.

{¶12} Burden had never met appellant before. Burden identified the Impala in a photograph. Burden also identified a photograph depicting damage on the passenger door of her Camry and testified that, prior to November 6, 2018, the Camry did not have the damage. Burden stated the damage to the front of her Camry was from Osborne

hitting the sign.  Burden went to the chiropractor for her neck and back pain after Dr. Simpson's office reached out to her.

{¶13}  Ashley Buckley ("Buckley") is appellant's ex-girlfriend.  In 2018, Buckley helped appellant purchase a dark brown Chevy Impala that he paid for and she put in her name.  As of September of 2018, the Impala was not damaged.  The night of the incident, appellant called Buckley and told her he was in an accident with a blue truck.  When Buckley saw the Impala and blue truck the day after the accident, there was barely any damage to the blue truck and a lot of damage to appellant's car.

{¶14}  Officer Larry Schacherer ("Schacherer") of the City of Mansfield Police, was dispatched on November 6, 2018, and found the Impala and blue truck at the scene. When Schacherer made contact with appellant, he noticed an odor of alcohol and his eyes were bloodshot and glassy.  Appellant did not seem agitated or angry when Schacherer made contact with him.  Schacherer attempted to elicit a statement from appellant's passengers, but they would not speak to him.  After Schacherer found out about the involvement of the Camry, appellant denied knowing anything about the Camry. Schacherer issued appellant a citation for OVI.

{¶15}  Officer Scott Kotterman ("Kotterman") of the Mansfield Police Department was dispatched via the 9-1-1- call.  It was initially unclear that the Camry and Impala/blue truck incidents were related.  Kotterman made contact with the three individuals in the Camry.  Kotterman described them as "visibly shaken" and "scared."  The driver and passengers in the Camry reported to Kotterman that they were followed aggressively, the Camry was hit several times, and they felt the Impala was trying to kill them.

{¶16} Kotterman noted black marks that indicated the Impala hit the Camry and found that the area of damage on the Camry was of comparable height to the damage on the Impala.  The damage between the Camry and Impala was consistent with a side-by-side impact.  He also noted there was mud on both the Camry and Impala.  Kotterman stated the damage on the door of the Impala was not consistent with hitting the blue truck, as there was significant damage to appellant's radiator grill, which Kotterman believes would not have occurred from rear-ending the blue truck, as the front of the Impala would have gone underneath the truck.  Kotterman could not physically prove how many impacts there were between the Impala and the Camry.  Kotterman does not believe the blue truck caused the damage to the Camry because the driver's side of the blue truck was not damaged. Rather, Kotterman thinks the front bumper portion of the Impala struck the passenger side of the Camry.  Kotterman identified multiple photographs that he took of the scene and also multiple photographs he took of the Impala, Camry, and blue truck.

{¶17} Kotterman testified that he compiled two separate reports relating to his investigation, one relating to traffic, and the other relating to felonious assault.

{¶18} Based upon Kotterman's conversations with the girls, he noted in his report that there were no injuries.  He did not observe any physical injuries.  However, Kotterman testified that many times injuries are not known until days or weeks after an accident.

{¶19} Tontoh Simpson ("Simpson"), a chiropractor, testified it is common that someone who is injured in a car accident may not immediately know it.  Simpson has a marketing group that contacts individuals after they are involved in a car accident.  Simpson treated Burden in November of 2018 and diagnosed her with a sprain of the cervical spine, thoracic spine, lumbar spine and fixation/locking of the spine at the neck,

mid-back, and low back. Simpson testified that Burden's injury could reasonably be the result of being involved in a car crash, including being sideswiped. Simpson saw Burden until the end of November, but she did not complete her treatment plan.

{¶20} Simpson diagnosed Osborne with sprains of the ligaments of the cervical, lumbar, and thoracic spine, and segmental dysfunction of the cervical, thoracic, and lumbar spine. Osborne also had right arm weakness. Osborne saw Simpson several times, but did not complete her treatment plan.

{¶21} Appellant testified as to the incident on November 6, 2018. Appellant stated he was taking a friend to the Hillside Circle Apartments. The friend ran back into the apartment to grab something and came back out. They then left and drove around the bend. Appellant did not notice any other cars around. Appellant admitted he was drunk and was driving a little reckless. When he turned onto Woodville, appellant saw a car in front of him and attempted to pass the car. However, due to an oncoming car, he hit his brakes and fell back into line. Appellant stated he "may have sideswiped the car," but did not know, as he did not feel any impact. All appellant could remember was seeing brake lights, and then the impact with the blue truck. It was not appellant's intent to do any harm to anyone that night.

{¶22} On cross-examination, appellant testified that when he said he was driving "aggressively," he meant he was driving fast, making hard turns, music up, and drunk driving. Appellant could not remember whether he hit the car when trying to pass it.

{¶23} The trial court issued a judgment entry on August 20, 2019. The court stated, "the court concludes that a motor vehicle can be used as a deadly weapon and that the defendant did knowingly cause injury to both victims Osborne and Burden and

attempted to cause physical harm to victim Barrett." As to aggravated vehicular assault, the trial court found appellant was driving a motor vehicle while under the influence of alcohol, and did cause serious physical harm to victims Osborne and Burden, but not to victim Barrett. The trial court thus found appellant guilty of Counts 1, 2, 3, 4, and 5, and not guilty as to Count 6. The court merged Counts 1 and 4, as well as Counts 2 and 5, for sentencing. The trial court ordered a pre-sentence investigation and issued a sentencing entry on November 1, 2019. Appellant was sentenced to three years on Counts One, Two, and Three, to be served consecutively to one another. Counts Four and Five merged with Counts One and Two. Appellant was also sentenced to one month on Count Eleven, to be served concurrently with the remainder of his sentence.

{¶24} Appellant appeals the August 20, 2019 and November 1, 2019 judgment entries of the Richland County Court of Common Pleas and assigns the following as error:

{¶25} "I. THE STATE'S EVIDENCE THAT GRIMES COMMITTED THREE COUNTS OF FELONIOUS ASSAULT AND TWO COUNTS OF AGGRAVATED VEHICULAR ASSAULT WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.

{¶26} "II. GRIMES' CONVICTIONS SHOULD BE REVERSED BECAUSE HIS TRIAL COUNSEL WAS INEFFECTIVE IN A MANNER THAT PREJUDICED GRIMES.

{¶27} "III.THE TRIAL COURT'S DECISION TO FIND GRIMES GUILTY OF COUNTS ONE THROUGH FIVE OF GRIMES'S INDICTMENT SHOULD BE REVERSED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING GRIMES OF EACH COUNT.

{¶28} "IV. IMPROPER HEARSAY TESTIMONY ADMITTED AT GRIMES' TRIAL DENIED GRIMES HIS RIGHT TO A FAIR ONE.

{¶29} "V. GRIMES WAS DENIED HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERROR."

{¶30} For ease of discussion, we will address appellant's arguments out of sequence.

I.

{¶31} In his first assignment of error, appellant argues the decision of the trial court was against the sufficiency of the evidence.

{¶32} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶33} Appellant was convicted of R.C. 2903.11(A)(2), which provides, "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶34} Appellant was also convicted of R.C. 2903.08(A)(1)(a), which provides that "no person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * (1)(a) as the proximate cause of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."

{¶35} Appellant cites four specific reasons as to why his convictions are against the sufficiency of the evidence.

{¶36} First, appellant contends appellee's evidence of felonious assault is not sufficient because appellee presented only circumstantial evidence of intent that was insufficient to overcome appellant's testimony about intent. Appellant believes that since none of parties in this case knew each other, the trial court committed error in disregarding Grimes' testimony that it was not his intent to do any harm to anyone that night.

{¶37} We disagree with appellant. Appellant's argument focuses exclusively on the credibility of the witnesses and the evidence. However, as the trier of fact, the court was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "While a trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the * * * sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar. 23, 2000). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992).

{¶38} Although the evidence may have been circumstantial, circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), superseded by State constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Simply because appellant testified that he did not intend to harm anyone that night does not mean his convictions for felonious assault are insufficient.

{¶39} Second, appellant avers the evidence that he knowingly used his vehicle as a deadly weapon was insufficient to sustain the felonious assault convictions because the trial court stated in its judgment entry that a motor vehicle "can" be used as a deadly weapon, but did not specifically find that appellant actually used the vehicle as a deadly weapon. We disagree with appellant's characterization of the language in the trial court's judgment entry. The language in the entry does not equate to a finding that the Impala was not a deadly weapon. The trial court's statement that a "motor vehicle can be used as a deadly weapon" comports with the law of this district that "an automobile can be classified as a deadly weapon when used in a manner likely to produce death or great bodily harm." *State v. Taylor*, 5th Dist. Delaware No. 12CAA020007, 2012-Ohio-5029. The question of whether an automobile is used as a deadly weapon is a question for the trier of fact. *Id.*

{¶40} The trial court then found that appellant knowingly caused injuries to Osborne and Burden, and attempted to cause physical harm to Barrett. The trial court concluded, "the Court finds defendant guilty of Counts 1, 2, 3 * * *." Since this was a trial to the bench, the trial court was permitted to make a general finding, i.e., guilty or not guilty. Criminal Rule 23(C); *State v. Lantz,* 5th Dist. Fairfield No. 01 CA 38, 2002-Ohio-3838. Thus, a specific finding as to every element of the offense is not required. *Id.* The trial court's judgment entry as to Counts 1, 2, and 3 was sufficient.

{¶41} Third, appellant avers there was insufficient evidence for the felonious assault convictions because a reasonable person could not have found beyond a reasonable doubt that the victims sustained physical harm. Physical harm is defined as

"any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶42} We disagree. Osborne testified she fell to the ground and vomited on the night of the incident. She also experienced neck, back, and head pain after the incident and went to the hospital two or three times for head pain. Osborne still experiences back pain. Burden stated she went to the chiropractor for back and neck pain. Simpson testified that: Burden had a sprain of several portions of her spine and locking of the spine; and Osborne had a sprain of several ligaments in her spine, right arm weakness, and segmental dysfunction of the spine. Viewing the evidence in a light most favorable to the prosecution, we conclude appellee produced sufficient evidence upon which the trier of fact could find that appellant caused harm to the victims within the meaning of R.C. 2901.01(A)(3).

{¶43} Finally, appellant contends there was insufficient evidence that he caused either physical harm or serious physical harm to Osborne, Barrett, or Burden, as any injuries were not directly attributable to appellant's vehicle hitting them. Rather, appellant argues any injuries were caused by: Osborne striking a car on Hillside prior to the Impala hitting the Camry; Osborne running into the blue truck; and Osborne hitting the traffic sign.

{¶44} We first note that there is no evidence or testimony that Osborne struck a vehicle prior to when the Impala started chasing and hitting the Camry.

{¶45} Osborne testified that as she was attempting to get away from the Impala, she hit the blue truck; however, there was no damage to the truck. Osborne then hit a sign with the front of the car in an attempt to evade the Impala. Both Barrett and Burden testified that Osborne "lightly swiped" the blue truck and hit a sign in an attempt to get

away from the Impala.  Kotterman stated that, based upon his investigation, he does not believe there was any damage to the Camry or the blue truck from where the Camry sideswiped the truck.

{¶46}  The requisite mental state for felonious assault is "knowingly," which is defined as follows, "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  It is well-established that one may be presumed to intend results which are the natural, reasonable, and probable consequences of his voluntary actions.  *State v. Farmer*, 156 Ohio St. 214, 102 N.E.2d 11 (1951).  Further, "it is not necessary that the accused be in a position to foresee the precise consequence of his conduct, only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct."  *State v. Wilson*, 5th Dist. Richland No. 13CA39, 2014-Ohio-41, quoting *State v. Losey*, 23 Ohio App.3d 93, 491 N.E.2d 379 (10th Dist. 1995).

{¶47}  Even assuming the injuries of Osborne and Burden occurred when the Camry sideswiped the blue truck or hit the sign in an attempt to escape the Impala, these injuries are a reasonably foreseeable result of appellant's actions.  Appellant may not have foreseen the precise injuries the victims would sustain as a result of his actions, but the injuries caused by their escape were within the scope of the risk created by his conduct.  *State v. Lett*, 8th Dist. Cuyahoga No. 106973, 2019-Ohio-532.  The injuries were a natural and logical outcome of his ramming the Impala into the Camry and the injuries were neither extraordinary or surprising.  *State v. Gibson*, 5th Dist. Stark No.

2013CA00183, 2014-Ohio-2352; *State v. Barron*, 5th Dist. Perry No. 05-CA-4, 2005-Ohio-6108 (finding appellant set in motion a sequence of events by chasing a vehicle, the foreseeable consequence of which should have been known to appellant); *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560 (finding "it is of no consequence that appellant did not specifically intend to cause injuries to the officers and his main goal was to get away"). Therefore, there was sufficient evidence that appellant knowingly caused physical harm to Osborne and Burden by means of the Impala, a deadly weapon.

{¶48} The trial court found appellant attempted to cause physical harm to Barrett in violation of R.C. 2903.11 ("attempt to cause physical harm to another * * * by means of a deadly weapon * * *). We find the evidence supports the trial court's conclusion that appellant was or should have been aware his actions would probably result in harm to Barrett under the totality of the circumstances. *State v. Taylor*, 5th Dist. Delaware No. 12CAA020007, 2012-Ohio-5029 (even though appellant testified that he did not attempt to cause physical harm, but accidentally bumped into the victim's car, the evidence supports the trial court's conclusion appellant was or should have been aware his actions would probably result in harm to the victim and the trial court's decision was supported by sufficient evidence); *State v. Kilton*, 8th Dist. Cuyahoga No. 80837, 2003-Ohio-423 (convictions not against the sufficiency of the evidence when appellant continued to bump the victim's vehicle). Therefore, there was sufficient evidence that appellant knowingly attempted to cause physical harm to Barrett by means of the Impala, a deadly weapon.

{¶49} As to the two counts of aggravated vehicular assault, the question is whether the violation of R.C. 4511.19 was the proximate cause of the serious physical harm to Osborne and Burden. It is well-established that the definition of "cause" in

criminal cases is identical to the definition of "proximate cause" in civil cases. *State v. Dunham*, 5th Dist. Richland No. 13CA26, 2014-Ohio-1042. The general rule is that a defendant's conduct is the proximate cause of injury to another if the defendant's conduct (1) is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability. *Id.* Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found, beyond a reasonable doubt, that appellant's conduct of ramming the Impala into the Camry was a substantial factor in bringing about Osborne's and Burden's injuries.

{¶50} Based on the testimony and evidence in this case, we find any rational trier of fact could have found the essential elements of R.C. 2903.11(A)(2) and R.C. 2903.08(A)(1)(a) proven beyond a reasonable doubt. We find sufficient evidence exists to support appellant's convictions. Appellant's first assignment of error is overruled.

III.

{¶51} In his third assignment of error, appellant contends the decision of the trial court as to Counts 1 through 5 was against the manifest weight of the evidence.

{¶52} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lots its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶53} It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216. The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *Id.*

{¶54} Appellant argues the trial court's decision was against the manifest weight of the evidence because the inference that appellant did not knowingly cause either physical harm or serious physical harm is more believable and persuasive than the inference that he did knowingly cause physical or serious physical harm. Appellant cites the following in support of his argument: Kotterman's testimony that no party reported any physical harm at the time of the incident; the victims claimed delayed injury only after being contacted by a marketing group; Burden never went to the hospital; and testimony by a witness that she knew Burden to be "a liar."

{¶55} Appellant's argument focuses on the victims' credibility. However, the determination as to the credibility of the witnesses is for the trier of fact. As to any inconsistencies in the testimony or evidence noted by appellant, "while the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752. The trier of fact need not believe all of a witness' testimony, but may accept only portions of it as

true.  *State v. Wilson*, 5th Dist. Muskingum No. CT 2019-0039, CT 2019-0040, 2020-Ohio-1217.

{¶56} Further, appellant contends the competing inferences suggest that the cause of the harm is not known, as Osborne made contact with multiple cars and objects, including a car that she hit before being followed by the Impala.

{¶57} As noted above, there is no testimony or evidence that Osborne struck another vehicle prior to being followed by the Impala.  The testimony confirmed she sideswiped the blue truck and hit the sign as she was attempting to escape the Impala.  Osborne testified there was no damage to the Camry from the blue truck.  Osborne, Burden, and Barrett agree that the Camry "lightly sideswiped" the blue truck.  Buckley stated that when she saw the vehicles the day after the incident, there was a lot of damage to appellant's car, and there was barely any damage to the blue truck.  In his investigation, Kotterman concluded the damage to the side of the Camry came from the Impala.  Appellant testified he did not intend to injure the victims and does not believe he caused their injuries.  However, when there are two conflicting versions of events, neither of which is unbelievable, it is not within our province to choose which one we believe.  *State v. Bauman*, 7th Dist. Columbiana No. 17 CO 0016, 2018-Ohio-4913.

{¶58} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot say that the trier of fact clearly lost its way and created a manifest injustice with regard to felonious assault and aggravated vehicular assault.  The trial court found that appellant rammed his vehicle into the victims' vehicle four times, chasing them, and that two of the victims suffered serious injuries that required them to seek medical attention.  This is not

the case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. See *State v. Taylor*, 5th Dist. Delaware No. 12CAA020007, 2012-Ohio-5029. Appellant's third assignment of error is overruled.

IV.

{¶59} In his fourth assignment of error, appellant contends the trial court denied him his right to a fair trial due to the admission of improper hearsay testimony.

{¶60} Because the hearsay was not objected to, our standard of review is plain error. *State v. Campbell*, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Plain error will not be found absent a showing by appellant that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Williams*, 99 Ohio St.3d 439, 793 N.E.2d 446 (2003). Additionally, trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 780 N.E.2d 186 (2002).

{¶61} Appellant cites four specific instances of allegedly improper testimony: the improper hearsay testimony of Officer Kotterman recounting the victims' out-of-court statements multiple times throughout the trial; improper bolstering of witness credibility by Kotterman; testimony about the victims' state of fear that is irrelevant and

inflammatory; and the improper hearsay testimony of Kotterman as to what the victims told him that caused them "to be in such fear."

{¶62} Appellant contends the victims' state of fear is irrelevant, because it has nothing to do with any element of felonious assault or aggravated vehicular assault. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence Rule 401. However, relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evidence Rule 404(A); *State v. Vandyne*, 5th Dist. Guernsey No. 16CA10, 2017-Ohio-584.

{¶63} Appellant is correct that fear is not specifically delineated as an element of either felonious assault or aggravated vehicular assault. However, upon our review, we find this testimony is relevant because it relates to one of the elements of the crime. A victim's state of mind is admissible pursuant to Evidence Rule 803(3). In determining whether the degree of harm rises to the level of "serious physical harm," many factors are taken into consideration, including whether the harm involves temporary, substantial incapacity, or whether the harm involves acute pain or substantial suffering. The definition of physical harm is broader and includes any injury, illness, or physiological impairment. A defendant can violate R.C.2903.11(A)(2) by "attempting to cause physical harm to another." This Court has previously noted that the degree of harm that rises to the level of serious physical harm is not an exact science. *State v. Hunt*, 5th Dist. Tuscarawas No. 2019 AP 07 0023, 2020-Ohio-1124. Further, that the concepts of "pain and suffering" are subjective feelings. *State v. Nicholson*, 5th Dist. Morgan No. 18 AP

0005, 2019-Ohio-1058. Thus, we have previously permitted testimony from an officer that the victim was "shaken, scared and crying," along with testimony from a second witness that the victim was "scared and shaking." *Id.*

{¶64} Further, this case was tried to the bench, rather than to a jury. "In a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence." *State v. Bays*, 87 Ohio St.3d 15, 716 N.E.2d 1126 (1999); *State v. Teagarden*, 5th Dist. Licking No. 08-CA-39, 2008-Ohio-6986. Thus, we must presume that, even if any testimony was erroneously admitted into evidence, the trial court did not consider it in rendering its verdict. *Id.* Any danger of unfair prejudice, confusion of the issues, or of misleading the trier of fact was minimal. *State v. Wilson*, 5th Dist. Fairfield No. 09-CA-44, 2010-Ohio-1394.

{¶65} Appellant next contends Kotterman's testimony recounting the victims' out-of-court statements multiple times throughout the trial was inadmissible hearsay and improperly bolstered the victims' credibility. Similarly, appellant argues Kotterman's testimony about what caused the victims to be afraid was also inadmissible hearsay.

{¶66} At trial, Kotterman testified to what the victims told him the night of the incident, including that they were chased and their Camry was hit several times.

{¶67} Hearsay is "a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evidence Rule 801(C). Testimony which explains the actions of a witness to whom the statement was made, and is offered to show why the witness acted in a particular manner rather than to prove the truth of the statement, is not hearsay. *State v. Thomas*, 61 Ohio St.2d 223, 400 N.E.2d 401 (1980). Given the potential for abuse in admitting statements

offered to explain an officer's conduct, the conduct to be explained must be relevant, equivocal, and contemporaneous with the statements. *State v. Blevins*, 36 Ohio App.3d 147, 521 N.E.2d 1105 (10th Dist. 1987). Further, the statements must meet the standard of Evidence Rule 403(A) ("relevant evidence not admissible if its probative value is outweighed by the danger of unfair prejudice, confusing of the issues, or misleading the jury"). *Id.* Finally, "when the statements connect the accused with the crime charged, they should generally be excluded." *Id.*

{¶68} Upon our consideration of the above law and the facts in this case, we find Kotterman's testimony in recounting the victims' statement to him satisfies the requirements of *Blevins*. Kotterman's statements came as he was describing how his investigation proceeded after he made contact with the victims. The testimony was not offered for the truth of the matter asserted, but to show the path of the investigation and to establish the foundation for Kotterman's subsequent testimony, including the photographs he took of the vehicles at the scene, and the compilation of two police reports after discussion with the other officers at the scene.

{¶69} Unlike in the case cited by appellant in support of his argument, Kotterman did not testify that he "believed" the victims or testify that the victims were "honest." *State v. Zimmeran*, 10th Dist. Franklin No. 18AP-75, 2019-Ohio-721, 132 N.E.3d 1185, *appeal not allowed*, 158 Ohio St.3d 1505, 2020-Ohio-2819, 144 N.E.3d 452. Rather, he explained what the victims told him at the scene and how he proceeded with his investigation, including examining the vehicles involved and the area around the scene of the incident. The testimony is not unfairly prejudicial. The trial court did not commit error in admitting this testimony.

{¶70} Appellant also contends the trial court improperly admitted Kotterman's testimony about the victims' narrative statements because it constituted improper bolstering. Bolstering is the presentation of evidence to a jury in order to make a particular witness' statement appear more credible. *State v. Teagarden*, 5th Dist. Licking No. 08-CA-39, 2008-Ohio-6986. We do not find that such testimony was presented in this case. Kotterman did not vouch for the victims' truthfulness. Rather, he detailed their narrative statement and how it impacted his investigation and related to the evidence at the scene. The trial court did not commit error in admitting this testimony.

{¶71} Kotterman stated at trial that "the vehicle [Impala] was trying to kill them, is what their mindset was." Appellee argues this testimony is admissible pursuant to Evidence Rule 803(3), which allows for a statement of the declarant's existing mental or emotional condition. While there is no error in the trial court's admission of statements regarding the victims' expressions of fear, the admission of the reasons for the victims' fearful state of mind is error under Rule 803(3). *State v. Anderson*, 5th Dist. Stark No. 2003CA00349, 2004-Ohio-5474. However, we find the admission of this evidence did not affect appellant's substantial rights. *State v. Gresh*, 5th Dist. Delaware No. 09-CAA-012-0102, 2010-Ohio-5814. This was a trial to the bench. The testimony in question occupies only a very small portion of an extensive record. There was evidence, if believed, of appellant's connection to the offenses in the absence of this statement by Kotterman. Thus, the error is harmless as appellant was not prejudiced by the admission of such a small piece of evidence in a trial to the bench. *State v. Stowers*, 5th Dist. Tuscarawas No. 94AP090066, 1996 WL 488798.

{¶72} Appellant's fourth assignment of error is overruled.

II.

{¶73} In his second assignment of error, appellant argues his trial counsel was ineffective in a manner that prejudiced him.

*Ineffective Assistance of Counsel*

{¶74} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his or her essential duties to their client. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.*

{¶75} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test, whether the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. *Id.* This requires a showing that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* Appellant makes several arguments as to why he believes his trial counsel was ineffective.

*Criminal Rule 29 Motion*

{¶76} Appellant contends trial counsel was ineffective for failing to move for acquittal under Criminal Rule 29, with resulting prejudice because his convictions were against the sufficiency of the evidence. The purpose of a motion for judgment of acquittal

is to test the sufficiency of the evidence. *State v. Wade*, 5th Dist. Muskingum No. CT2019-0007, 2019-Ohio-4565. Based upon our analysis and disposition of appellant's first assignment of error, we find appellant's trial counsel was not ineffective in failing to make a Criminal Rule 29 motion for acquittal. Further, this Court has previously held that, in a bench or nonjury trial, a defendant's not guilty plea serves as a Criminal Rule 29 motion. *Id.*

*Failure to Object to Chiropractor Testifying as an Expert Witness*

{¶77} Appellant avers his trial counsel was ineffective for failing to object to Simpson testifying as an expert without being qualified by the trial court as one under Evidence Rule 104(A). "The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Fears*, 86 Ohio St.3d 329, 715 N.E.2d 136 (1999). A defendant must also show that there was a substantial violation of counsel's essential duties to his client and that his client was materially prejudiced by the failure to object. *State v. Holloway*, 38 Ohio St.3d 329, 527 N.E.2d 831 (1988).

{¶78} Appellant is correct that Simpson was never deemed an expert witness by the trial court and that defense counsel could have objected to the quoted testimony. However, had appellee so requested, Simpson likely would have been deemed an expert by the trial court; it appears appellee inadvertently failed to make such a request. *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768. Simpson took pre-med training and ten semesters of chiropractor school, for a total of about eight years of education to become a chiropractor. Simpson is licensed and has to complete thirty hours of training every two years to keep his license. Over his twenty-year career, Simpson has personally treated approximately 16,000 patients in his office. He treats individuals and

helps to relieve the symptoms of individuals who have been in car crashes. About twenty percent of his practice is devoted to individuals involved in car crashes.

{¶79} Thus, we cannot say that defense counsel's failure to object fell below an objective standard of reasonable representation. Further, there is no evidence that indicates the result of the trial was unreliable or the proceeding was fundamentally unfair as a result of defense counsel's failure to object. We are persuaded that the outcome of this case would not have been different had portions of Simpson's testimony been objected to and deleted at trial, as the victims themselves testified to their injuries.

*Failure to Object to Testimony about Victims' State of Fear*

{¶80} Appellant argues his counsel was ineffective for failing to object to appellee's introduction of evidence concerning the three victims' state of fear, because it was irrelevant and inadmissible testimony.

{¶81} As we discussed above, we find the trial court did not commit error in admitting this evidence. Thus, we find any objection would not have been meritorious. Even if this testimony was objectionable, appellant fails to establish that the outcome of his trial would have been different had counsel objected.

*Bolstering Victim Credibility & Victims' Narrative*

{¶82} Appellant next avers his trial counsel was ineffective for consistently failing to object to inadmissible hearsay that bolstered the victims' testimony at trial. Similarly, appellant argues his trial counsel was ineffective for failing object to Kotterman's testimony about what the victims told him. We first note that trial counsel did object to at least one instance of Kotterman testifying to what the victims told him. Further, having already determined that the testimony was properly admitted, appellant's claim of

ineffectiveness on this issue is overruled. Appellant has not demonstrated that, had counsel objected, the result of the trial court would have been otherwise.

*Hearsay Connecting Appellant to Charges*

{¶83} As detailed above, we find the trial court erred in admitting Kotterman's testimony that "the vehicle [Impala] was trying to kill them, is what their mindset was." However, we find appellant was not materially prejudiced by the failure to object to this testimony, because this was a trial to the bench. Further, the testimony is a very small portion of an extensive record, and there is other evidence which, if believed, connects appellant to the offenses in the absence of Kotterman's statement.

{¶84} We find the remainder of the statements appellant cites were merely statements by Kotterman as to how his investigation proceeded and what the evidence showed (i.e. mud splash marks, marks on the roadway) during his investigation. Thus, these statements do not improperly connect appellant to the charges. We find any objection to these statements would not have been meritorious and appellant has not demonstrated that had counsel objected, the result of the trial court would have been otherwise.

*Ultimate Issue*

{¶85} Appellant contends his trial counsel was ineffective for failing to object to Kotterman testifying as to the ultimate issue on whether the Impala was a deadly weapon, improperly offering a legal conclusion. During redirect, counsel for appellee questioned Kotterman about how many reports he compiled as a result of his investigation. He stated there was a traffic crash report and a felonious assault report. Appellee inquired as to why there were two reports, asking, "So we have two reports. One pertaining to felonious

assault; correct? * * * Because the vehicle involved being a deadly weapon; correct?" Kotterman responded, "Correct." Kotterman then testified about the purposes of each report.

{¶86} "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evidence Rule 704; *State v. Stafford*, 5th Dist. Ashland No. 18-COA-036, 2019-Ohio-3628. In this case, Kotterman made the statement to explain the difference between the types of reports he compiled and explain why he generated a felonious assault complaint.

{¶87} However, even if the testimony should not have been admitted, appellant was not materially prejudiced by the failure to object to this testimony and appellant fails to establish that the outcome of his trial would have been different had counsel objected. The testimony is one sentence of an extensive record. Further, since this was a bench trial, the danger of unfair prejudice, confusion of the issues, or misleading the trier of fact is minimal, particularly where the trial court is the trier of fact determining whether the Impala was used as a deadly weapon. *State v. Wilson*, 5th Dist. Fairfield No. 09-CA-44, 2010-Ohio-1394. "In a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence." *State v. Bays*, 87 Ohio St.3d 15, 716 N.E.2d 1126 (1999); *State v. Teagarden*, 5th Dist. Licking No. 08-CA-39, 2008-Ohio-6986.

{¶88} Appellant's fourth assignment of error is overruled.

V.

{¶89} In his fifth assignment of error, appellant argues he was denied his right to a fair trial through cumulative error, including: ineffective assistance of counsel, irrelevant

evidence about the victims' state of fear, hearsay evidence of Kotterman that directly linked appellant to the crimes, Simpson testifying as an expert, and Kotterman's testimony on the ultimate issue.

{¶90} The Ohio Supreme Court held that, pursuant to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995).

{¶91} In this case, we do not find multiple instances of harmless error triggering the cumulative error doctrine. Appellant's fifth assignment of error is overruled.

{¶92} Based on the foregoing, appellant's assignments of error are overruled.

{¶93} The August 20, 2019 and November 1, 2019 judgment entries of the Richland County Court of Common Pleas are affirmed.


By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur